CLARK v. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

Division Two, March 5, 1895.

1. **Railroad**: PASSENGER: DEGREE OF CARE REQUIRED. A railroad company, operating cars by steam and engaged in the carriage of passengers, is required, so far as it is capable by human care and foresight, to carry them safely, and it is responsible for all injuries resulting to its passengers from even the slightest negligence on its part.

2. ———: ———: ———: PRIMA FACIE CASE. Where a passenger suffers injuries received in the breaking down or overturning of the coach in which he is riding, a *prima facie* presumption arises that such casualty was caused by negligence on the part of the carrier, and the burden is on the latter to repel such presumption and to show that the injury was the result of inevitable accident or some cause which human precaution and foresight could not have averted.

3. ———: ———: ———: NEGLIGENCE. Plaintiff was a passenger in one of defendant's sleeping cars; the train was stopped at midnight when partly over the line of an intersecting railroad and was permitted to so remain for five minutes without any attempt being made to flag the trains of the other company, and the train of the latter collided with the car in which plaintiff was, occasioning the injuries complained of. *Held*, that the defendant was guilty of negligence.

4. ———: ———: ———: ———. The fact that the defendant may have relied on the observance, by the servants of the intersecting road, of a statute requiring its trains to make a full stop before going over railroad crossings, constitutes no defense for it.

| | |
|---|---|
| 127 | 197 |
| 130 | 52 |
| 127 | 197 |
| 133 | 6 |
| 127 | 197 |
| 80a | 520 |
| 127 | 197 |
| 152 | 432 |
| 127 | 197 |
| 82a | 505 |
| 127 | 197 |
| 160 | 636 |
| 127 | 197 |
| f 87a | 435 |
| 127 | 197 |
| 93a | ¹274 |
| 127 | 197 |
| 102a | ⁵541 |
| e102a | ¹588 |

5. ———: ———: ———. One must use reasonable precaution for his. own safety and then, in the absence of information to the contrary, he may act on the presumption that others will obey the law.

6. ———: ———: ———: VERDICT: DAMAGES. A verdict for $7,500 for personal injuries, *held* not excessive, plaintiff being a member of a firm doing a business of $750,000 a year and being confined to his bed for a month, and two years after the injury suffering from insomnia from pains in his back and spine, with the possibility of never recovering.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*R. H. Kern* and *John A. Bellatti* for appellant.

(1) The plaintiff must prove facts which establish the negligence of the defendant as the proximate cause of his injuries. 16 Am. and Eng. Encyclopedia of Law, page 453. (2) It is necessary for the plaintiff to establish by evidence circumstances from which it may fairly be inferred that there is a reasonable probability that the accident resulted from the want of some precaution which the defendant might, and ought to, have resorted to, and what particular precaution should have been taken. *Daniel v. Railroad*, L. R. 3 C. P. 216; *Hayes v. Railroad*, 111 U. S. 228; *Railroad v. Stribbing*, 62 Md. 504; 16 Am. and Eng. Encyclopedia of Law, 601; *McCarg v. Railroad*, 8 Hun, 599; *Searles v. Railroad*, 101 N. Y. 661. (3) It is incorrect to say that, because an accident happened the defendant was guilty of negligence in not foreseeing that it might happen and in not guarding against that remote contingency. *Dougan v. Company*, 56 N. Y. 1; *Hubbell v. City*, 104 N. Y. 434; *Hayman v. Railroad*, 118 Pa. St. 508; *Graff v. Railroad*, 161 Pa. St. 230; *Deyl v. Railroad*, 34 N. Y. 9; *Railroad v. Gibson*, 11 Am. and Eng. Railroad Cases, 142. (4) An inevitable accident is a fortuitous event, an accident which can not be foreseen or prevented.

10 Am. and Eng. Encyclopedia of Law, page 601. (5) A casualty happening against the will and without the negligence of the party, is as to him an inevitable accident. *Hodgson v. Dexter*, 1 Cranch C. C. 109. (6) An accident is an unusual and unexpected event from a known cause. 1 Am. and Eng. Encyclopedia of Law, page 82. (7) The law has not made a railroad company an usurer against every casualty that may happen. When it has exercised the highest degree of care for the safety of the passenger consistent with the reasonable exercise of its franchise, the injury must be attributed to inevitable accident. *Railroad v. Stumps*, 69 Ill. 509; 2 Wood on Railway Law, 1049. (8) No case or principle can be found, subjecting a defendant to liability for an injury caused by an accident that happened without fault on his part. All cases concede that an injury arising from inevitable accident lays no foundation for legal responsibility. 1 Thompson on Negligence, 47 and 61; 16 Am. and Eng. Encyclopedia of Law, page 396, and cases cited in note. (9) "When the plaintiff's own evidence shows the operation of causes beyond the control, as the tortious act of a stranger, tending to produce the accident, the plaintiff, in order to make out a *prima facie* case, must generally be able to go over and prove the actual negligence of the defendant as an operating and efficient cause, or that by the exercise of due diligence the accident might have been avoided." Booth's Street Railway Law, sec. 361; Wharton on Negligence, sec. 661; *Lebarrow v. Ferry Company*, 11 Allen, 312; *Gillespie v. Railroad*, 6 Mo. App. 554; *Railroad v. Gibson*, 11 Am. and Eng. Railroad Cases, 142.

*Geo. W. Bailey* for respondent.

(1) As to the duty and degree of care owing by carrier to passenger: The law on this point seems so

well settled that it is deemed that a few citations of selected authorities will be sufficient. *First.* The universally accepted rule is that "they are bound to the utmost care and diligence of very cautious persons." 2 Greenleaf on Evidence [15 Ed.], sec. 221; *Derby v. Railroad,* 14 Howard, 486; *Railroad v. Phillips,* 55 Ill. 194; *Furnish v. Railroad,* 102 Mo. 442; *Sawyer v. Railroad,* 37 Mo. 260. *Second.* "They bind themselves to carry safely, as far as human care and foresight can go, and are responsible for the slightest neglect." Angell on Carriers, sec. 569; *Lemon v. Chanslor,* 68 Mo. 356; *Stokes v. Saltonstall,* 13 Peters, 181; *Christy v. Griggs,* 11 Pick. 106; *Ingalls v. Bills,* 9 Metc. 1. *Third.* Under any given circumstances, "the degree of care and diligence must be in proportion to the peril and the seriousness of the consequences of neglect, and the slightest negligence would be culpable." *Railroad v. Phillips,* 55 Ill. 194; *Warren v. Railroad,* 8 Allen (Mass.), 227; *Railroad v. Derby,* 14 Howard, 486; *Furnish v. Railroad,* 102 Mo. 442; Patterson's Railway Accident Law, 165. *Fourth.* "The highest degree of care, not amounting to an absolute warranty against injury, or involving such an expenditure of money and effort as would paralyze the business itself, will be required." Story on Bailments, secs. 601, 602; *Railroad v. Lewis,* 58 Am. and Eng. R. R. Cases, 126; *McPadden v. Railroad,* 44 N. Y. 478; *Taylor v. Railroad,* 48 N. H. 304; 2 Kent's Commentaries, 600; *Ritter's Adm'r v. Railroad,* 85 Ky. 368. (2) A railroad is a known place of danger, as a matter of law, and those who attempt to cross it, or to obstruct it, necessarily or unnecessarily—without exercising due care and caution to avoid accident or collision, are guilty of negligence as a matter of law. *Farmer v. Railroad* (1894), 99 Mich. 131; *Kellow v. Railroad,* 68 Iowa, 470; *Weller v. Railroad,* 120 Mo. 647; *Dlauhi v. Railroad,* 105 Mo. 657;

*Moore v. Railroad*, 108 Pa. St. 352; 2 Wood on Rail-roads, pp. 1518, 1520. (3) *First.* In conflicting evidence as to negligence, it becomes a question for the jury; "but when evidence has been introduced which is sufficient, as a matter of law, to hold defendant liable, or to create a presumption of negligence, the burden of proof shifts to defendant." 2 Wood on Rail-roads, 1518, 1520, 1567; *Canal Co. v. Bentley*, 66 Pa. St. 30; *Railroad v. Foreman*, 73 Texas, 311; Thompson on Negligence, 1235. *Second.* "Where the facts are undisputed, and the inference of negligence would not be a matter of doubt about which reasonable minds could differ, it is proper for the court to declare the existence of negligence as a matter of law." *Tetherow v. Railroad*, 98 Mo. 74; *Weller v. Railroad*, 120 Mo. 647; *Kinney v. Springfield*, 35 Mo. App. 97; *Ridings v. Railroad*, 33 Mo. App. 527; *Boland v. Kansas City*, 32 Mo. App. 8; *Railroad v. Craig*, 58 Am. and Eng. R. R. Cases, 208; *Railroad v. Ives*, 144 U. S. Rep. 408. (4) "And the question whether it was an act of negligence to stop the train upon the crossing, depends entirely upon whether the passengers were thereby exposed to such danger." *Kellow v. Railroad*, 68 Iowa, 470. (5) And such exposure to danger, where the facts are disputed, is evidence of negligence as a matter of fact and shifts the burden of proof. *Clayton v. Brooks*, 150 Ill. 105; Beach on Cont. Negligence [2 Ed.], sec. 37. (6) The rule that the act of the defendant must be "found to be the immediate and proximate cause of the accident," does not apply where one has been injured by the independent acts of two wrong-doers, and where the act of the defendant wrongdoer constitutes a breach of contract. *Kellow v. Railroad*, 68 Iowa, 470; Wood on Railroads [Ed. 1894], p. 1558; *Ferry Co. v. Nolan*, 135 Ind. 67. (7) As to the injury being attributable to the act of a stranger, third party,

or joint tortfeasor, or acting on the assumption that a tortfeasor will obey the law. *First*: "No person has a right to depend entirely upon the care and prudence of others. He is bound to exercise due care to prevent injury from the lack of proper precaution in others. This is a rule of law and it is only in exceptional instances that the question—as to whether his neglect to take such precaution is excusable—is for the jury." 2 Wood on Railroads, 1518, 1520; *Weller v. Railroad*, 102 Mo. 647. *Second.* Where the concurring negligence of two railroad companies causes a collision, either or both are liable therefor. In such case "a defendant company can not escape liability merely because the negligence of some other person or corporation concurred with his own wrongful act in causing the injury." Wood on Railroads, p. 1558; *Railroad v. Shackel*, 105 Ill. 364; 12 Am. and Eng. R. R. Cases, 166; *Cuddy v. Horn*, 46 Mich. 596; *Transfer Co. v. Kelly*, 36 Ohio St. 86; *Railroad v. Spencer*, 98 Ind. 186. (8) The term "highway," used in the constitution and statutes of Illinois, is not applicable to the case at bar. Wood on Railroads, pp. 2, 3, 4; *Railroad v. Rockafellow*, 17 Ill. 54; *Railroad v. Spearman*, 12 Iowa, 112. (9) The damages were not excessive. *Griffith v. Railroad*, 98 Mo. 168; *Dimmit v. Railroad*, 40 Mo. App. 658; *Furnish v. Railroad*, 102 Mo. 455.

GANTT, P. J.—On the night of December 3, 1890, James E. Clark, the plaintiff, was a passenger on one of defendant's trains traveling from Chicago, Illinois, to Kansas City, Missouri. It was a fast train known as "the hummer." He purchased his ticket in Chicago and retired to sleep in one of the sleeping cars of the train. The train reached Jacksonville, Illinois, about midnight. At this point the Chicago and Alton railroad's track extends north and south and is inter-

sected by the tracks of the Wabash railroad, which extend east and west. The tracks of each road cross the other at grade. There were two sleeping cars attached to defendant's train in which plaintiff was a passenger and he was in the forward of the two.

The train reached Jacksonville from ten to twenty minutes behind time and a few minutes after midnight. It stopped about one hundred or one hundred and fifty feet from the intersection and in full view of it, and the engineer, seeing the crossing was clear, drew his train into the station and stopped. When it stopped, the locomotive was thirty to fifty feet north of the south end of the depot platform, and the two sleeping cars and about twenty feet of the north end of the chair car, comprising at least one hundred and sixty feet of the train, was left standing north of the intersecting Wabash railroad track. There was no physical or other reason which rendered it absolutely necessary to stop the train with a portion of it north and the other part south of the Wabash track, but it was a matter of convenience in handling baggage, freight and express matter, and discharging passengers at the depot and on the platform. The platform could have been made longer without interfering with any other highway.

No flagmen were stationed on the Wabash track or elsewhere to keep a look out for the Wabash train, which was an hour and a half late that night. There was much evidence that the Wabash train whistled three times in the mile and a half east of the station as it approached and no one connected with defendant's train heard any but the last signal which was given a few seconds before the collision.

While this train was thus standing across the Wabash track, a Wabash freight train, consisting of nineteen cars loaded with coal and going west, collided

with defendant's train, crushing through the sleeping car "Matterhorn" in which plaintiff was asleep, cutting the car into two parts between the center and the north end, killing two of the passengers and wounding several and inflicting the injuries to plaintiff for which this action is brought.

The petition seeks to recover the damages plaintiff has suffered by defendant's failure, through negligence, to safely carry plaintiff from Chicago to Kansas City, as it had as a common carrier agreed to do, in that it "negligently, carelessly, needlessly and with a reckless disregard of the rights and safety of plaintiff and its duty to him placed said train of cars, one of said cars being the sleeping car in which plaintiff was asleep and unconscious, directly upon and across the railway and right of way of the said Wabash Railroad Company, and carelessly, negligently, unlawfully, needlessly and with a reckless disregard of plaintiff's rights and safety and of defendant's duty and obligation to plaintiff as its passenger there, permitted said train to stand, remain and unlawfully and negligently obstruct, and for an unusual and dangerous and unreasonable length of time stand across, said Wabash tracks and right of way and thus carelessly exposed said train and plaintiff to the imminent danger and peril of collision with the trains of the Wabash company, and, while thus standing upon and across the right of way of the Wabash Railroad Company, defendant negligently suffered said train and sleeping car to be violently struck, run into and upon and against and through by a locomotive and cars of the Wabash Railroad Company and said sleeping car crushed, shattered and cut in two parts, demolished and wrecked. That plaintiff's person was caught and became entangled in said wreck, and plaintiff was crushed, and bruised and severely injured, and rendered uncon-

scious thereby, and while so unconscious was knocked or carried in said wreck, by said locomotive several yards distant and finally tossed upon a bed of snow and ice which was then and there existing beside said railroad tracks of said Wabash Railroad Company, where he lay unconscious until picked up by bystanders and taken into the railway station of defendant for protection and medical attention.

"Plaintiff alleges that the direct and proximate cause of said collision was the failure of the agents, servants, and employees of the defendant to exercise due and even ordinary diligence and precaution to prevent the same, and the failure of the agents, servants, and employees of defendant to exercise that degree of precaution, which, if exercised, would have rendered said collision impossible. That the agents, servants and employees of defendant could have prevented said collision by the exercise of even due and ordinary diligence after they had discovered or might have discovered by the exercise of ordinary care the peril and danger to which the plaintiff was exposed by the conduct of the agents, servants and employees of said Wabash Railroad Company but failed to exercise the same.

"Plaintiff states that, by reason of said collision and as a result thereof, his body was severely wounded, bruised, contused and wrenched, both externally and internally, and that his spinal column was particularly wrenched and permanently injured, and that he suffered great bodily and mental pain as direct results of said injury and collision, and was confined to his bed and room, by reason thereof, for a long period of time, to wit, for the period of about three months; that, by reason of said injury, he was disabled and prevented from attending to his business affairs and interests for the space of over six months, and from

giving but partial attention to the same for the space of over one year, and that, ever since said injuries, he has been, and still is, unable to give ordinary or usual attention to the same; that, ever since said accident, and as direct results thereof, and by reason of said injuries, he has suffered, and will continue to suffer, great bodily pain, annoyance, inconvenience and expense; that, as direct results of said injuries and collision, he was compelled to procure, and did procure, necessary medical attention, and services and treatment, which then were necessary, and still are, and will continue to be necessary for an indefinite period, and that, on account of said services alone, he has been put to the expense of about the sum of $800.

"Plaintiff states that, by virtue of the premises, he has been injured and damaged in body, mind, health, pain and suffering, loss of time, and necessary expenses, in the sum of $20,000, for which sum, together with his costs in this behalf expended, he prays judgment against said defendant."

The defendant, in its answer, admits that it was a common carrier as alleged, and pleads that, under the laws of the state of Illinois in force then, all railroads were made public highways, among others the said Wabash Railroad Company; that, as such, they were required to maintain depots for the transaction of their business by the laws of the state of Illinois, and that all trains approaching the crossing of another railroad on the same level were required to come to a full stop before reaching the same, within eight hundred feet therefrom, and the duty of the engineer was to see before he crossed that the way was clear and that the train could safely proceed; that railroads could obstruct any public highway by stopping its train thereon for the period of not longer than ten minutes, for the purpose of receiving and discharging passengers; that

it must provide cars for receiving passengers at its junction with other railroads, and stop its cars at all stations advertised as places for receiving and discharging passengers; that this depot was jointly used by the Wabash Railroad Company and itself; that it was its duty, under the laws aforesaid, to stop its trains at this depot long enough to receive and discharge passengers, etc., there; that the city of Jacksonville was then one of the regular stations on its road; that it stopped its train no longer than was necessary to receive and discharge passengers, etc., there; that in doing this it was compelled to stop its train over the tracks of the Wabash Railroad, and as soon as it had discharged its duty, and before the collision, it had started promptly to remove its train in which plaintiff was a passenger, and that the injury was caused simply and entirely by the negligence of said Wabash Railroad Company not complying with the aforesaid law in stopping its railroad train within a distance of eight hundred feet, or any nearer distance, of the aforesaid crossing of the two said railroad companies' tracks at its said depot at Jacksonville, Illinois. The replication is a general denial.

There was a trial in the circuit court of the city of St. Louis and a verdict for $7,500 for plaintiff from which defendant appeals.

The grounds urged in this court to reverse the judgment are: *First.* The court erred in giving instruction number 13, which is as follows: "13. The jury is instructed by the court, that, if the jury believe from the evidence, that plaintiff was a passenger, lawfully on board of the defendant's train *at the time of the collision appearing in evidence, and received injuries therein*, then the burden of proof is shifted upon the defendant to show, to the satisfaction of the jury, that said collision was caused through no fault, negligence

or carelessness of defendant's agents, and, unless it is so shown, the jury should find a verdict for plaintiff;" *second*, the court erred in refusing instructions asked by defendant, and numbered 4, 5 and 11; *third*, damages awarded plaintiff excessive; *fourth*, in giving instructions numbers 4 and 5 as modified; *fifth*, the court erred in not sustaining a demurrer to the evidence.

I. The obligation of a steam railway carrier to its passengers is, as far as it is capable by human care and foresight, to carry them safely, and it is responsible for all injuries resulting to its passengers from any, even the slightest, neglect, and when the passenger suffers injury by the breaking down or overturning of the coach the *prima facie* presumption is that it was occasioned by some negligence of the carrier, and the burden is cast upon the carrier to rebut and establish that there has been no negligence on its part and that the injury was occasioned by inevitable accident or by some cause which human precaution and foresight could not have averted. *Lemon v. Chanslor*, 68 Mo. 340; *Furnish v. Railroad*, 102 Mo. 438.

This degree of care is sometimes expressed to be "the highest degree of care of a very prudent person in view of all the facts and circumstances at the time of the alleged injury." *O'Connell v. Railroad*, 106 Mo. 482; *Waller v. Railroad*, 83 Mo. 608. Again is is expressed to be "the utmost care and skill which prudent men would use and exercise in a like business, and under similar circumstances." *Jackson v. Railroad*, 118 Mo. *loc. cit.* 224, 24 S. W. Rep. 199; *Smith v. Railroad*, 108 Mo. 243; Redfield on Carriers, sec. 347. The various formulas amount to the same thing in principle. Carriers are not insurers of the absolute safety of their passengers, nor are they responsible for inevitable and unavoidable accidents, but a just regard and solicitude

for the safety of human life and limbs has led to the adoption and maintenance of the above rule.

We do not understand the learned counsel for defendant to question the rule itself, but they contend that the thirteenth instruction given for plaintiff was and is erroneous in that (they assert) it declared the law to be that when plaintiff showed that he was injured on this occasion it shifted the burden of proof from him to the defendant. Counsel argue that both the pleadings and plaintiff's own evidence show this collision was caused by a force beyond the control of the carrier, to wit, the tortious act of the Wabash Railroad, and that in such a case the plaintiff is required, in order to make out a *prima facie* case, to go further and prove the actual negligence of defendant as an operating and efficient cause of the injury.

We think the court clearly did not err in this regard. The burden was shifted upon defendant by this instruction if the jury should find plaintiff was "lawfully on board of the defendant's train *at the time of the collision appearing in evidence, and received injuries therein.*" The admitted and uncontroverted facts in evidence disclosed that plaintiff was lawfully on board of defendant's train and asleep in a car provided for passengers, who desired to sleep; that "the collision appearing in evidence" occurred just after midnight; that defendant's servants and trainmen in charge of the train in which plaintiff was asleep, stopped said train across the track of another intersecting railroad, and kept said train standing for five minutes exposed to the danger of collision with the trains of the Wabash Railroad and without taking any precautions for guarding said train against the danger of a collision with a train on the Wabash, and that a Wabash train did run into and collide with said train of defendant whereby plaintiff was hurt without any fault on his part whatever.

VOL. 127—14

That is to say that the admitted facts which proved the injury also proved defendant's negligence and developed the circumstances from which negligence was necessarily presumed.

The doctrine of *vis major*, or the tortious act of a stranger producing the injury, has no application in this case. The law is that the burden of proof is upon the defendant "where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it, or where it is caused by the mismanagement of a thing over which the defendant has immediate control, or for the management or construction of which it is responsible." Booth on Street Railway Law, sec. 361; *Meier v. Railroad*, 64 Pa. St. 225; *Coudy v. Railroad*, 85 Mo. 85.

Here the train which stopped in a known place of danger was entirely under the control of defendant's agents and servants, and by their mismanagement they voluntarily suffered that train to stand in a position where it was liable to be struck by trains of the Wabash railroad. To escape liability on the ground of *vis major*, or the tortious act of a third person, it devolved upon defendant to show that it was guilty of no fault in falling into the danger, but all the testimony showed that defendant, with a reckless disregard of the lives of those committed to its keeping, placed them in a position of recognized peril. It sacrificed the lives and bodies of its confiding and sleeping passengers to a mere matter of convenience. To escape responsibility for this, it pleads the negligence of the Wabash company in not stopping its train before reaching the point of intersection, forgetting that, as to its passengers, before it can avail itself of the negligent act of the Wabash, its own negligent act must not have also contributed to the injury.

We think the circuit court upon this showing correctly assumed that, under the admitted facts of this case, the defendant was *prima facie* guilty of negligence *per se* in stopping and holding its train across the track of the Wabash.

About the recklessness of such an act at midnight, with a train load of sleeping passengers, we do not think reasonable men can or ought to differ. There was no controlling necessity compelling it to stop any portion of its train over the crossing, and if there had been, the most ordinary diligence would have suggested the necessity and duty of posting flagmen in each direction to warn the trains of the other road.

Nothing in the statutes of the state of Illinois read in evidence justified, much less required, defendant should expose its train to that collision. The right *to cross* is one thing; the right *to stop and obstruct another railroad* is quite another thing. The statute forbidding the railroads of Illinois to obstruct any public highway by stopping any train upon, or by leaving a car or locomotive engine standing on, its track where the same crosses such public highway, except for the purpose of receiving or discharging passengers or to receive necessary fuel and water, and in no case to exceed ten minutes for each train or engine, has no application to railroads.

"Railroads are not common highways, in the sense of public wagon roads, upon which everyone may transact his own business with his own means of conveyance, but only in the sense of being compelled to accept of each and all, and take and carry to the extent of their ability" as common carriers. *Railroad v. Rockafellow*, 17 Ill. 541; *Hyde v. Railroad*, 110 Mo. 272; *Farber v. Railroad*, 116 Mo. 81; 1 Wood on Railroads [Minor's Ed. 1894], pp. 2–4.

But it is very plain that there is nothing in this

mere police regulation, adopted to prevent the unnecessary blocking of streets and roads, that can absolve the defendant from its obligation as a common carrier of passengers to observe the utmost care and precaution which very prudent men would use and exercise under similar circumstances.

In addition to leaving its train over the Wabash track without sending out a flagman to observe the approach of a train on that road, the peculiar topography of the country at this point is such that, had any of the employees been required even to listen for a train, this terrible misfortune might have been averted. The evidence discloses that the whistle of a train on a clear cold night, as the one on which the collision occurred, could be easily heard for two miles, perhaps three or four. It was shown that the Wabash engineer gave three signals for brakes within a mile of the intersection at which this collision occurred, and the whistle for the station was given a little over a mile distant. None of these whistles, except the last, which was given only a few seconds before the disaster, was heard by any of the train crew. It further appeared that the headlight of the Wabash train was shining and that it could have been seen for a mile, at least. There was also evidence that the rumble of the Wabash train on such a night could easily be heard for two miles, but was not heard by any employee on the Chicago & Alton train until about seventy-five yards distant from the crossing. It is out of the question, under this testimony, to claim that a demurrer to the evidence should have been sustained.

Little need be added as to the assignments on the fourth and fifth instructions as amended. Without the qualification added by the court they assert the bold proposition that defendant had a right to assume that the Wabash train would obey the law of Illinois and

come to a stop before reaching the intersection of the two roads, and that it could safely rely upon this assumption without exercising any care whatever to guard against any misunderstanding of orders by employees of that road or defective machinery that might render it impossible to stop a train as required by the statute. In other words, this carrier, of whom the law exacted such a high degree of prudence in caring for the safety of those who had committed their lives into its keeping, assumed that it might rely for their safety entirely upon the care and prudence of others.

But such is not the law. No one has a right to rely entirely upon the obligations of others to observe the law, and himself neglect and disregard the dictates of prudence. He must use reasonable precautions for his own safety and then in the absence of information to the contrary he may act upon the presumption that others will obey the law. The obligation to exercise due care is mutual and correlative. It does not mean that one may disregard all the laws of prudence himself and yet require of his neighbor to observe caution in protecting him against his own imprudence. *Lynch v. Railroad*, 112 Mo. 420; *Weller v. Railroad*, 120 Mo. 635. There was no error in qualifying the instructions.

Indeed, we doubt their propriety at all under the facts in evidence. The whole theory of these two instructions is wrong when applied to this case. The defendant's obligation grew out of a contract of carriage. Granting that the collision would not have happened but for the negligence of the Wabash, it is clear it would not have occurred but for the concurring negligence of defendant in leaving its train standing, unguarded and unprotected, across the Wabash track. By so doing it violated its contract and became liable for the injury resulting from that breach. *Kellow v. Railroad*, 68 Iowa, 470.

Finally, we are asked to reverse because the damages are excessive. The trial occurred over two years after the injury was inflicted. The verdict was for $7,500. Unless it is apparent that the verdict is the result of passion, prejudice or evident mistake, the verdict will not be disturbed in this court.

The evidence established that the plaintiff, at the time of the accident, was a leather merchant. He was a member of the firm of "Clark, Van Tassel & Company," of Boston, Mass. This house did a business of $750,000 during the year 1890. He had the management of its finances largely. At the time of plaintiff's injury he had organized another firm, Wright, Clark & Company. The old firm expired January 1, 1891. His injuries confined him to his bed for a month in St. Louis and he then returned to Boston. By that time the lower end of the spine or coccyx had increased so he could not sit down or lie down with any comfort. He was under medical treatment for three months at a cost of $750. He apparently recovered the use of his limbs and went to work when the trouble in the coccyx returned. Insomnia followed. He still suffered at time of trial from pains in the back and up the spine. He was still under the care of a physician. Dr. Graham testified that he would never get relief in his opinion until the coccyx was removed by a surgical operation. The physician thought the coccyx was fractured or disjointed. That it was in a diseased condition. His nervous system shows considerable impairment; has to sleep with a pillow under his back. There was great soreness at the base of the spinal column. The physician thought the trouble likely to be of long standing, if not permanent. Could not say whether it would be permanent. The plaintiff himself testified fully as to his injuries and the loss of time from his business.

Considering the importance of his services to his

firm, and the volume of their business, and the character of his injuries, we can not say the verdict was so excessive as to indicate passion or prejudice.

We have examined the points made in both briefs for defendants, though this practice is not in keeping with our rules. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.