ROBERT F. GOODLOE, Respondent, v. METROPOL-
ITAN STREET RAILWAY COMPANY, Appel-
lant.

Kansas City Court of Appeals, July 2, and October 1, 1906.

1. PASSENGER CARRIERS: Collision: Negligence: Evidence:
Burden of Proof.    When a passenger shows that he is injured
by the collision of a car with another, it is sufficient not only
to carry the issue of negligence past the judge to the jury,
but to raise a presumption of negligence that becomes con-
clusive if the carrier fail to rebut the same.

2. ———: ———: ———: ———: Slippery Track.    The fact that
a track may be slippery is no excuse for a collision, since an
experienced motorman should take such matters into account
in managing his car.

3. PERSONAL INJURY: Damages: Evidence: Excessive Verdict:
Appellate Practice.    The evidence relating to the extent of
personal injury is examined and a verdict of $1,500 is not held
excessive; and appellate courts will not interfere unless the
verdict is so large as to indicate it was not the result of
judgment, fairly exercised, but of passion or prejudice.

4. ———: ———: Pleading: Instruction.    A petition alleged that
the injuries were "permanent and lasting" and that the "earn-
ing capacity had been impaired."    Held, that loss of earnings
was specially pleaded, and that an instruction employing the
expression, "will in the future disable him from earning money
and making a support," does not enlarge the issue and is not
subject to criticism of failing to restrict the recovery for fu-
ture consequences which were reasonably certain to result
from the injury.

Appeal from Jackson Circuit Court.—*Hon. Hermann
Brumback*, Judge.

AFFIRMED.

*John H. Lucas* and *Frank G. Johnson* for appellant.

(1)  The verdict is excessive, the result of passion
and prejudice and should be set aside for that reason.
Taylor v. Railroad, 185 Mo. 262; Hite v. Railroad, 130
Mo. 131; Whitsett v. Ransom, 79 Mo. 260.  (2)  The

court erred in giving instructions numbered 1 and 2 for plaintiff; they ought to have been refused. They did not confine the jury's attention to the issues presented in the pleadings and did not correctly declare the law controlling the controversy between plaintiff and defendant. Feurt v. Ambrose, 34 Mo. App. 366; Lumber Co. v. Miller, 64 Mo. App. 628; Livery Co. v. McKelvy, 55 Mo. App. 242; Wood v. Railroad, 181 Mo. 444; Redmon v. Railroad, 185 Mo. App. 10; Heyde v. Transit Co., 102 Mo. App. 541; Paquin v. Transit Co., 90 Mo. App. 128; Krueger v. Railroad, 94 Mo. App. 462; Schwend v. Transit Co., 105 Mo. App. 537; Walker v. Railroad, 106 Mo. App. 326. (3) The court erred in refusing to give instruction numbered 2 as requested by the defendant. The burden of proof is upon the plaintiff and the court erred in placing the same, under the facts in this case, on the defendant. Ballard v. Kansas City, 110 Mo. App. 396; Wilbur v. Railroad, 110 Mo. App. 697; Haas v. Railroad, 111 Mo. App. 716; Butcher v. Death, 15 Mo. 271; Gessly v. Railroad, 26 Mo. App. 156; Fleischman v. Miller, 38 Mo. App. 177; Allen v. Transit Co., 183 Mo. 532; Boyd v. Transit Co., 108 Mo. App. 306; Kohr v. Railroad. — Mo. App. —.

*L. A. Laughlin* for respondent.

(1) Defendant complains that the verdict is excessive. In fact the verdict is for a very moderate amount under the evidence. (2) Defendant criticises instruction No. 1 given for plaintiff and says that it is erroneous because it shifts the burden of proof. This instruction is copied after one approved in Clark v. Railroad, 127 Mo. 197, in which a passenger was injured by a collision. (3) Defendant next complains of instruction No. 2 on the measure of damages. That instruction is copied from one approved by the Supreme Court in Prewitt v. Railroad, 134 Mo. 615; McKinstry v. Transit Co., 108 Mo. App. 12.

JOHNSON, J—Action by a passenger against a common carrier to recover damages for personal injuries sustained in consequence of the negligence of the carrier. Plaintiff had judgment in the sum of $1,500 and defendant appealed.

The negligence charged in the petition is, "that while plaintiff was a passenger as aforesaid and was standing on the rear platform of said car, by reason of the negligence of the defendant said car ran into another car of defendant standing on the same track. That the force of said collision threw plaintiff violently into the car on which he was riding and onto his head, inflicting upon plaintiff injuries as follows," etc. The answer is a general denial.

Defendant, as a part of its street railway system, operates a double track railroad between Kansas City and Independence. Electricity is the power used in propelling the cars. On account of the presence in the roadway of a high embankment about one-fourth of a mile long, the tracks thereon are laid so close together that both occupy a lateral space only a few inches more than that covered by each, so that while the tracks are not merged, a car going eastward on one cannot pass a westbound car on the other in that section of the road.

On January 2, 1904, plaintiff, accompanied by his wife and their two sons, became a passenger at Independence on one of defendant's cars that was bound for Kansas City. His wife and sons seated themselves in the car, but plaintiff, who was chewing tobacco, stood in the rear vestibule to avoid spitting on the floor of the car, an act forbidden by the rules of defendant as well as by the dictates of common decency. The car proceeded on its way using the tracks for westbound cars and all went well until it reached the section of track described. At that time, an eastbound car was passing over that section and had the right of way. It was the

duty of the motorman of the westbound car to wait until the other car had passed out of the way before running his car onto the embankment, but he failed to stop and the two cars collided. The eastbound car had come to a stop at the time of collision, but the westbound car, according to the testimony of defendant's witnesses, was running at the rate of about four miles per hour. The impact was sufficiently violent to wreck the front vestibule of the westbound car and to pitch plaintiff forward through the open door between the body of the car and the rear vestibule and throw him to the floor. The collision occurred about two hundred feet west of the point where the tracks converge. Both cars carried headlights. The motorman of the eastbound car, introduced as a witness by defendant, testified that he saw the other car approaching when his car was on the embankment some eight hundred or nine hundred feet from the place of collision. He was running at the rate of fifteen miles per hour and when he observed that the other car was on the point of entering into danger, he shut off the current, applied the brakes, and stopped. It was not shown that the motorman on the westbound car made any effort to stop before he reached the embankment. He was not introduced as a witness and the only excuse for his remarkable conduct offered in evidence is that he was running down grade and the rails were slippery owing to the condition of the weather.

The first instruction given on behalf of plaintiff is as follows: "The court instructs the jury that the burden of proof is on the plaintiff to establish his case by the preponderance of the evidence, and by a preponderance of the evidence is meant the greater weight of the credible testimony; but the court instructs the jury that if you find from the evidence that plaintiff was a passenger lawfully on board of the defendant's train at the time of the collision, appearing in evidence, and received injuries therein, then the burden of proof as to the cause

of the collision is shifted upon the defendant to show to the satisfaction of the jury that said collision was caused through no fault, negligence or carelessness of defendant's agents; and unless it is so shown the jury should find that such collision was occasioned by the negligence of defendant."

Counsel for defendant appear to think that plaintiff was at fault in choosing to stand in the vestibule instead of seating himself in the car. Defendant did not raise the issue of contributory negligence in its answer and therefore that issue is not in the case. But had it been presented, the fact suggested would not have sufficed to make plaintiff's conduct an issue for the consideration of the jury. Plaintiff had the right to indulge in the use of tobacco during the transportation and was riding in the part·of the car provided by defendant for such passengers. Defendant impliedly invited him to be there if he chose, and in no manner was relieved from the performance of the duty it owed him as a passenger by his acceptance of the invitation.

Defendant criticizes the instruction quoted because of the declaration that the burden of proof on the issue of negligence shifts to the carrier when the facts that plaintiff was a passenger and was injured by the collision of the car, in which he was riding, are made to appear, and argues that, when all the evidence was introduced, the burden was still with the plaintiff to show by a preponderance of the evidence the existence of all of the facts elemental to the cause of action asserted. The instruction under consideration was copied literally from one approved by the Supreme Court in the case of Clark v. Railway, 127 Mo. 197, and it was there said that "When the passenger suffers injury by the breaking down or overturning of the coach, the prima facie presumption is that it was occasioned by some negligence of the carrier, and the burden is cast upon the carrier to rebut and establish that there has been no negligence

on its part and that the injury was occasioned by inevitable accident or by some cause which human precaution and foresight could not have averted." [Smiley v. Railway, 160 Mo. 629; Robinson v. Railway, 103 Mo. App. 110; Furnish v. Railway, 102 Mo. 438.] With the fact established, that the passenger was injured by a collision of the car in which he was riding, he, as the proponent of the proposition that he was injured by the negligence of the carrier, produced evidence of sufficient strength, not only to carry the issue of negligence past the judge to the jury, but to raise a presumption of negligence that would become conclusive, should the carrier fail to produce rebutting evidence.

Defendant completely failed to produce any evidence that even tended to exculpate it from the presumption of negligence, and in the state of the proof before us the only issuable facts that remained in the case at the conclusion of all the evidence, were those relating to the measure of damages. The court would have been justified in peremptorily instructing the jury on all other issues presented by the pleadings and, therefore, the question of whether the burden of proof ever shifts is immaterial. Defendant's witnesses all agree that plaintiff was a passenger, that the collision occured in the manner described, that plaintiff was overthrown thereby and received physical injury therefrom. Instead of producing evidence tending to show that the collision was the result of inevitable accident, the facts adduced by defendant accuse its motorman, who was operating the westbound car, of gross negligence. He must have seen the eastbound car when it was one-third of a mile away, for the motorman of that car saw his car at that distance. He must have known that the approaching car was on the embankment and therefore had the right of way and it became his imperative duty to stop his car before entering on the embankment and there wait until the other car had passed. Instead of doing this, he ap-

proached the embankment without checking speed. The slippery state of the rails was a condition he, as an experienced motorman, should have taken into account and affords not the slightest excuse for his failure to stop his car before it reached the danger point. What we have said answers all the objections made to this instruction.

It is insisted by defendant that the verdict was excessive. Plaintiff at the time of injury was forty-three years old and was a teamster. He sustained some slight injuries to the head and shoulder from his fall, but his serious injury was to the left hand. At the time of the trial, which occurred more than a year after the injury, the hand was so stiff that the fingers could not be closed. The injuries are thus described by a physician who treated plaintiff and who testified as his witness: "I found the worst trouble with the left hand; a. sprained wrist and the whole hand in fact. Some of the small bones were broken; and soreness of the left shoulder, partly in front and underneath the shoulder joint. I found the middle finger was fractured at this joint, right near the base joint. The third finger was dislocated at the metacarpo-phalangeal joint, the third joint. There was a fracture of this bone at that point and also the bone here in the hand back of the joint (indicating). The little finger was fractured at this third joint and it was a great deal more sore at the second joint; the soreness at that point continued much longer. I don't believe it is well yet at that point. And the whole hand was badly swollen." Shortly before going on the stand, witness examined the hand and found it in this condition: "Some irregularity in the outline, some crookedness in two fingers, the little finger and the one next to it, and a set of broken muscles and tendons there which prevents closing the fingers to the extent they should be in ordinary use." Q. "Now, what in your opinion is the reason for this contraction there which prevents the closing of the hand?" A. "Well.

the principal reason for that is the contraction of the tendons on the back of the fingers, which prevents the flexing or closing of the fingers, while the adhesion of both of those fingers back and front from the soreness there has caused them to be stiffened and practically useless and prevents the closing and flexing or extending of the fingers." Q. "State whether or not you think that condition is permanent." A. "It is, I told him in the beginning and he didn't believe me."

Defendant introduced as a witness the physician who first treated plaintiff for the injuries sustained. He testified: "When I first saw it, it was not swollen to any extent. I got there immediately after he got home, at least he told me so. So I went down there and looked at the hand. I looked at the hand and examined it very closely and found the first phalanx of the ring finger, that is the first joint of the ring finger, up that close to the joint, was fractured, that is, within about half an inch of the first joint; that is, it was probably about that close, it might have run up tapering a little. The little finger was dislocated in the last joint next to the hand." Q. "Doctor, from your experience in setting fractured bones and reducing dislocations, I will ask you to state if that hand had been left as you placed it what would have been the result of it?" A. "He would have had a good hand."

That plaintiff suffered great pain from the injury and that his hand was seriously crippled when the case was tried are facts not denied by defendant and it is tacitly admitted in the guarded question and answer above quoted that the injury to the hand is permanent. Plaintiff testified that he had been disabled from following his vocation or from doing any work that required the use of both hands.

Under such facts we cannot say that a verdict of $1,500 must be regarded as excessive. The learned trial judge and jury, who saw and heard the witnesses and

saw the injured member, were better able than we are to form an accurate opinion as to the extent of the injury and of the compensation plaintiff should be awarded. We do not interfere in such case unless it clearly appears that the verdict is so large as to indicate that it was not the result of judgment fairly and intelligently exercised, but of passion or prejudice.

Defendant objects to the instruction on the measure of damages on the ground that the issue of plaintiff's total disability to earn money in the future as a result of his injury is submitted, while no such issue is pleaded and no proof of total disability adduced. The petition alleges, "That said injuries are permanent and lasting in character and effect and have caused plaintiff in the past, and in the future will cause him, to suffer great bodily pain and mental anguish. That his earning capacity *has been impaired.*" To impair is to diminish, decrease, or deteriorate, and to allege that plaintiff's ability to earn money has been impaired, coupled with the statement that the cause that produced that result is permanent, is the assertion of the fact that the impairment likewise is permanent and therefore raises the issue of a permanent deterioration in earning capacity and satisfies the rule that loss of earnings, being in the nature of special damages, must be specially pleaded. [Wilbur v. Railway, 110 Mo. App. 689; Gurley v. Railroad, 122 Mo. 151; Britton v. St. Louis, 120 Mo. 437; Mellor v. Railroad, 105 Mo. 462.] The instruction, in employing the expression "will in the future disable him from earning money and making a support" does not enlarge the scope of the issue pleaded. The word "disable" is not modified by the adverb "totally" as erroneously assumed by defendant and evidently is used to describe the condition of permanency in the impairment of earning capacity rather than the complete destruction thereof.

The instruction is not subject to the criticism that

it failed to restrict the recovery of damages for future consequences to such as were reasonably certain to result from the injury. [Wilbur v. Railway, supra; Halley v. Railroad, 115 Mo. App. 652, 91 S. W. 163; Reynolds v. Transit Co., 189 Mo. 408, 88 S. W. 50.]

The judgment is affirmed. All concur.