CARRIE BOWLIN, by next friend, Respondent, v. UNION PACIFIC RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 20, 1907.

1. PASSENGER CARRIERS: Appellate Practice: Weighing Evidence: Demurrer. Where the appellate court finds the evidence supporting the judgment possesses substance it does not weigh it in the balance with that opposed to it, but accepts the judgment of the triers of fact as final; but where the supporting evidence lacks value and is too weak to raise an issue, the court as a matter of law should brush it aside and prevent the accomplishment of wrong.

2. ——: ——: ——: ——. Evidence relating to the question whether the plaintiff was injured or not in a certain wreck of a train is reviewed and held properly sent to the jury.

3. ——: Injury to Passenger: Presumption of Negligence: Instruction. Where a passenger is injured by a casualty to the vehicle in which he was riding, the presumption of negligence on the part of the carrier arises and becomes conclusive on its failure to produce rebutting testimony; and where the carrier fails to show that a derailment was occasioned by unavoidable accident it is no longer open to dispute that the derailment was caused by the carrier's negligence; and an instruction submitting that question to the jury is properly refused.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*N. H. Loomis* and *Douglass & Watson* for appellant.

(1) The court erred in not setting aside the verdict because it is against the evidence and the greater weight of evidence. (2) The court erred in not setting aside the verdict because the record shows the verdict is so palpably against all the credible evidence that it shows the jury were actuated by passion and prejudice. (3) The court erred in refusing to give the instruction asked by defendant that the burden of proof was upon the plaintiff to prove defendant was negligent as charged in petition.

*Reed, Yates, Mastin & Howell* for respondent.

(1) The verdict in this case is not against the overwhelming weight of the evidence, as claimed by appellant. If this were so, however, there is nothing about the case to indicate that the verdict is the result of passion or prejudice of such character as to warrant the interference of the appellate court. (2) The court did not err in refusing to give defendant's instruction A, because it is not the law that the burden of proof is on the plaintiff to prove the negligence of the defendant in a case of this character. This question is set at rest by numerous Missouri authorities. Turnish v. Railroad, 102 Mo. App. 452; Redmon v. Railroad, 185 Mo. 10; Hipsley v. Railroad, 88 Mo. 348; Dimmitt v. Railroad, 40 Mo. App. 660.

JOHNSON, J.—Action by a passenger against a common carrier to recover damages for personal injuries alleged to have been caused by the negligence of the carrier. The judgment was for plaintiff in the sum

of fifteen hundred dollars and the cause is here on appeal of defendant.

The act of negligence averred in the petition is "that while said train was being so operated by defendant upon its tracks, near the said city of Junction City, Kansas, the defendant, by its agents, servants and employees in charge thereof, carelessly and negligently operated and ran and operated said train in such manner that the same was wrecked and one of the coaches thereof thrown down an embankment over which defendant's track ran and the car of said train in which this plaintiff was riding was so jarred, jostled and shaken that the plaintiff was thrown from her seat in said car and upon and against other seats thereof and upon the floor of said car and was thereby greatly injured." The answer is a general denial.

First, it is argued by defendant that its request for an instruction in the nature of a demurrer to the evidence should have been given. The evidence of plaintiff discloses this state of facts: On the nineteenth of September, 1904, plaintiff, then sixteen years of age, was a passenger on one of defendant's passenger trains. She had boarded the train at Union, Oregon, and her destination was Kansas City. At the time of her injury, the equipment of the train consisted of a baggage and mail car, three passenger cars, a dining car, and four sleeping cars, the first of which was a tourist car. Plaintiff was seated in one of the rear chairs of the middle passenger coach, which was a chair car. Following, was one of the coaches, the dining car, and the sleeping cars. At a point near Junction City, the dining and sleeping cars were derailed from some cause not shown, while the train was running at a speed variously estimated from twenty to forty miles per hour. The car in which plaintiff was riding did not leave the track. Emergency brakes were applied and the train was quickly brought to a standstill, but not until after the rear sleeper had

become detached and rolled down an embankment. The derailment, together with the violent application of the brakes, produced a severe jerking of the chair car and plaintiff thus describes the effect produced on her: "I was sitting on the seat next to the aisle, and the way it was jogging it jerked me forward and then kind of jogged backward and set me flat; then I was there sitting where my feet should be; I was just sitting cata-cornered. When I sat down I was sitting where my feet were . . . When I sat down there, well, it hurt me just like—well, I don't know just exactly how it did hurt; it hurt pretty bad, and then I got sick, I got kind of sick when I got up and felt like I was going to vomit, and I went outside and was standing on the steps, and vomited off the steps." She says she did not think at the time that she had sustained any injuries worthy of mention, and it was not until she arrived at Kansas City that evening that she found she had been seriously hurt. She went to the home of her mother who lives in Kansas City, and that night complained of severe pain and was nervous to the point of being hysterical. The next morning, a physician was called. Plaintiff refused to permit him to examine her then, but on the following day, submitted to an examination and was found to be injured in the manner we shall presently state.

No other witness testified to seeing plaintiff fall from her seat in the car, and defendant introduced a large number of witnesses, many of whom were fellow passengers with plaintiff, who testified that so far as they observed, no passenger in the chair car was injured or unseated by the disturbance occasioned by the derailment and subsequent stop. A little girl who was riding next to plaintiff testified that plaintiff was seated by the window and was not thrown from her seat nor hurt in any manner. Defendant contends that as the testimony of plaintiff is unsupported and is contradicted by so many reputable and disinterested witnesses, it should

be regarded as lacking sufficient strength to raise an issue of fact to go to the jury, especially in view of the further fact, practically conceded by plaintiff on cross-examination that she was a prostitute of the lowest type.

The principle followed by us in the case of Lehnick v. Railway, 118 App. 611, is invoked as applicable to the facts of the present case. There we held that "where the preponderance of the evidence against the verdict is so ·strong as to raise a presumption of prejudice, corruption, or gross negligence on the part of the jury, the appellate court has the right to interfere with such verdict." At this term, we had occasion to deal again with this principle (Pickens v. Railway, 125 Mo. App. 669), and held that "where the court finds the evidence supporting the judgment possesses substance, it does not weigh it in the balance with that opposed to it, but accepts the judgment of the triers of fact as a final adjudication of the issues which, under the law, they must decide. But where the supporting evidence lacks value, either because it fails to measure to the standard of the rules of evidence, or is opposed by evidence of such over-·whelming strength and verity that it is too weak to raise an issue, the appellate court, as a matter of law, should brush it aside, and, regarding the judgment as the offspring not of a fair and impartial effort on the part of the judge and jury to discharge their duties, but of an improper motive, interpose the restraining hand to prevent the accomplishment of flagrant wrong." The principle requires no further discussion than that bestowed upon it in the two cases mentioned, and we will proceed to consider it in connection with the facts before us.

All of the witnesses for defendant admit that the rear cars of the train were derailed as claimed by plaintiff. Some of them appear to think that the effect of this disaster on the chair car was not sufficiently pronounced

to unseat a passenger riding therein, but the sum of all the evidence is that the derailment and the emergency application of the brakes produced a series of jolts and jars to the chair car, the most severe of which may be likened to the concussion produced when two cars are brought together violently in making a coupling. A reasonable inference to be drawn from the attending physical facts is that, as the chair car was in the midst of contending forces of high potentiality, its disturbance was sufficient to unseat a passenger, surprised by the occurrence. Supported as she appears to be by the conceded physical facts, the testimony of plaintiff that she fell and was injured is endowed with enough evidentiary force to raise an issue of fact, and it remains to be considered whether her testimony should be held to be devitalized by that given by so many witnesses, many of whom appear to be wholly disinterested and of unimpeached veracity. To justify us in interfering with the judgment on the ground under discussion, it is not enough that we should believe from the record that the weight of the evidence is against plaintiff, for we have nothing to do with weighing the evidence, but we must find that the testimony of plaintiff is so manifestly untrue, that a judgment based upon it can be considered in no other light than as an exhibition of passion or prejudice on the part of the triers of fact. After analyzing the testimony of defendant's witnesses, we are constrained to hold that it does not indubitably disprove the statement of plaintiff, and it possesses no higher power than is required to present a controversy for the solution of the jury. True, it appears beyond dispute that no other passenger in the car was unseated, but it is apparent that the degree of force required to produce that effect on one passenger might not have the same effect on another. The size and weight of a passenger and his position in his seat, doubtless, would have much to do with the effect produced on him by the operation of such

outside forces. It is no greater tax on credulity to be-
lieve that a single passenger could have been thrown
from his seat than it would be to believe that half of
them were similarly affected. And, relative to the fact
that no person saw plaintiff fall to the floor, the evi-
dence is not of a thoroughly convincing character. Her
seatmate is the only witness who positively states that
she did not fall. All of the other witnesses say they did
not see her fall; but it must be borne in mind that she
was seated in the extreme rear of the car, and, at the
time of her mishap, a disaster involving the safety of the
whole train was in progress. Doubtless, all of the pas-
sengers were greatly excited and apprehensive and the
jury was entitled to indulge in the inference that in their
situation, they gave but little attention to plaintiff.
Their testimony, including that of plaintiff's seatmate,
is of a negative character, and while it often happens
that the testimony of a witness who asserts that a cer-
tain thing did not occur is entitled to as much weight
as that of a witness who says that it did occur, the value
to be placed on negative evidence should be measured
largely by the means of knowledge possessed by the wit-
ness and the degree of attention he gave to the occur-
rence. [Butler v. Railroad, 117 Mo. App. 354.] It was
for the jury to determine how much credit should be giv-
en to the testimony of these witnesses and they well
might have believed that the fact that the fall of plain-
tiff was unseen by any of the alarmed passengers was
of little weight when placed in the balance with her pos-
itive assertion and the physical facts by which it is
strongly supported. In addition to the circumstances
we have mentioned, the evidence adduced by plaintiff
clearly tends to show that on her arrival at Kansas City,
she was suffering from a severe injury. Defendant
argues that the physical condition discovered by the
physicians who examined her was the result of venereal
disease, but the trouble with this contention is that it

rests more on conclusions drawn from her dissipated mode of life than on the facts in evidence which concern the nature of her injury. The two physicians who treated her testified that she was not afflicted with disease and that her condition was clearly traumatic in its origin. The physicians appointed by the court who examined plaintiff about the time of the trial of the case testified that while some of her symptoms were those which attend syphilis, they were not necessarily due to the presence of that disease, but might have resulted from an injury similar to that claimed by plaintiff, or from the operation of medicine. All of the doctors agree that the coccyx showed signs of having sustained a severe concussion and that certain ones of the internal organs were inflamed and enlarged in a manner symptomatic either of the results of a severe external injury or of a diseased condition produced by dissipation. The physician appointed by the court would not express the opinion that plaintiff had been afflicted with venereal disease. We think the evidence of the medical witnesses justifies the inference that plaintiff had sustained a severe injury to the extreme end of her spinal column and that the cause of that injury had been sufficiently violent to produce injurious consequences to some of the abdominal organs. Thus, it appears that plaintiff's account of her injury is sustained by the physical facts and circumstances of the wreck, by the nature and character of her own physical injuries, and that it is opposed only by the negative testimony of witnesses, the force of whose evidence is weakened by the reasonable inference that their position was such that they did not possess accurate means of knowledge. With the case in this posture, there is no room for the conclusion that the verdict was the result of passion or prejudice. Issues of fact were presented, the solution of which fell solely within the province of the triers of fact. The demurrer was properly overruled.

Further, defendant contends that the court erred in refusing to give, at its request, the following instruction: "The court instructs the jury that the burden of proof is on plaintiff to prove to your satisfaction by the preponderance or greater weight of the credible testimony that defendant company was guilty of negligence as submitted to you in these instructions, and this burden of proof continues and abides with plaintiff throughout the entire trial, and unless you believe and find from the evidence in this case that the plaintiff has proven by the preponderance of credible testimony to your reasonable satisfaction that the defendant was guilty of negligence, as defined in these instructions, and that such negligence was the proximate cause of the injuries complained of, then your verdict must be for the defendant."

On the finding by the jury that plaintiff was injured in being thrown from her seat by the violent motion of the car and that such motion was produced by the derailment of the cars in the rear of the train and by the application of the emergency brakes, the burden of proof under which plaintiff rested at the beginning of the trial was fully discharged, since the derailment of the cars and the application of the brakes are conceded facts. Given an injury to a passenger caused by a casualty to the vehicle in which he is riding, a presumption of negligence on the part of the carrier arises which becomes conclusive on its failure to produce rebutting testimony. As was said in Clark v. Railway, 127 Mo. 197, when the passenger suffers injury by the breaking down or overturning of a coach, the prima facie presumption is that it was occasioned by some negligence of the carrier and the burden is cast upon the carrier to rebut and establish that there has been no negligence on its part, and that the injury was occasioned by unavoidable accident or by some cause which human precaution and foresight could not have averted. [Goodloe v. Railway, 120 Mo. App. 194.] Defendant did not attempt to show that the

derailment of the cars was caused by unavoidable accident or by some cause which could not have been averted by the exercise of the degree of care required of common carriers in the transportation of passengers. In the absence of such proof, the negligent cause of the derailment became an established fact. It was no longer open to dispute, and, as the instruction before us required the jury to find not only that plaintiff was injured as the result of the casualty to the train but also that the occurrence was the result of the carrier's negligence, it is erroneous, since it would compel her to sustain before the jury the affirmative of a proposition not open to controversy under the conceded facts in evidence. We refer to the opinion in the Goodloe case for a further expression of our views on the question in hand.

Criticism is made of an instruction given by the court on the measure of damages, but so obviously is the point without merit that its discussion would serve no useful purpose.

The judgment is affirmed. All concur.