THE STATE OF MARYLAND, use of MARY M. BAR-
NARD, and others *vs.* THE PHILADELPHIA, WIL-
MINGTON AND BALTIMORE RAILROAD COMPANY.

*Action in Damages—Taking case from the Jury—Onus of
Proof of Negligence.*

In an action brought under Article 65, of the Code of Public General
Laws, against a railroad company, to recover damages for the
alleged killing of one who was not a passenger nor in the service
of the company, the Court is justified, where the circumstances of
the killing are altogether conjectural, in withdrawing the case
from the jury.

The *onus* of proving the negligence which occasions the injury sued
for, rests on the plaintiff, and there is no presumption of negligence.

APPEAL from the Circuit Court for Cecil County.

This action was brought under Article 65, of the Code
of Public General Laws, in the name of the State, for the
use of the widow and children of John R. Barnard,
deceased, to recover damages for the killing of the said
Barnard, alleged to have been occasioned by the negli-
gence of the agents of the railroad company. After the
evidence was in, the plaintiff offered seven prayers, and
the defendant nineteen. The Court (STUMP, J.,) rejected
the prayers of the plaintiff, and granted the first prayer
of the defendant which instructed the jury that there was
no legally sufficient evidence in the case, that John R.
Barnard was killed by the defendant's negligence. The
plaintiff excepted. The jury rendered a verdict for the
defendant, and judgment was entered on the verdict. The
plaintiff appealed. The facts are sufficiently stated in the
opinion of the Court.

State, use of Barnard, *et al. vs.* Phil., Wilm. & Balto. R. R. Co.

The cause was argued before BARTOL, C. J., YELLOTT, MILLER, ALVEY, and IRVING, J.

*James P. Gorter*, and *H. Arthur Stump*, for the appellant.

*William J. Jones*, and *Alexander Evans*, for the appellee.

IRVING, J., delivered the opinion of the Court.

The only ground, upon which the appellant's counsel have claimed a reversal in this case, is that the Circuit Court erred in taking the case from the jury, by an instruction that there was no legally sufficient evidence, that the death of John R. Barnard was occasioned by the defendant's negligence; and the only negligence, of which they contended there was evidence, was that the bridge, over Union street, in the town of Havre de Grace, was not entirely covered with plank.

The facts are few, simple and uncontroverted. On the morning of the 15th of December, 1881, the deceased was found dead upon a bridge of the appellee, built over Union street, in Havre de Grace. He lived at Perryville, on the other side of the Susquehanna River. He had been an agent of the railroad at that place for some years; but had been discharged some time before his death for intemperance. He was consequently perfectly familiar with the road and the localities around the place where he was found dead. He had been accustomed to walking across the bridge frequently by day and by night; and at all times of the night. He was in Havre de Grace the night before his discovery on the bridge dead, and was drinking. He was last seen, near midnight, in the neighborhood of the ticket office, or station, and witness thought he was "pretty tight." He was advised not to attempt to walk across the bridge that night, but he insisted he would go home.

When last seen he was at the proper passenger platform in front of station house. When found he was on the other side of the railroad track, between the south platform and the railroad track. He was caught between two cross-ties, outside the railroad track, and between it and the platform, on that side. He had slipped down as far as his hips. His body was bent forward toward Perryville, his breast on one cross-tie and his head on the one next beyond. One shoe and stocking were off, and with his hat, and flask of whiskey (which was still corked) were found in the street below. His neck was broken, and there was a wound on the back of his head, and one on his left shoulder ; and his shins were bruised. The deceased had one lame foot, which was painful, upon which he wore a large and untied shoe. He said of that foot, that if he " took his shoe off and let the fresh air strike it," it was not so painful. How he came where he was, or in the condition in which he was no one knew. It was unexplained. No body had seen him go there or saw him there till he was found dead. The theory of the plaintiff was that he went there to board the train to cross the river ; and because the bridge was uncovered he fell between the crossties, and was struck by a train and killed. That is bare presumption. The officers of no train saw him. There seems to be no greater warrant for that presumption than that he was walking the bridge to his home and fell in as he was found ; or sat down in a besotted condition to cool his foot, and was killed. There is certainly no evidence on the subject. It was a bad night. It was raining and sleeting. This bridge was a continuation of the bridge over the river. Crossing from Perryville the bridge connects with a high bank at Havre de Grace, which it reaches by crossing Union street, nearly at right angles, and above grade to the height of fifteen feet above the street. The station house at Havre de Grace is at the end of the bridge and on the north side of it. On this side, along the

track, in front of station house, extending for several hundred feet is a platform for passengers to get off and on trains going in either direction. On the south side, there is a platform also, on the bridge, on which passengers have sometimes alighted from trains going south and occasionally boarded going south; but which is not convenient, because of the necessary position of passenger coaches, for boarding cars going north; and which was seldom used by any one going north; and it does not appear in the proof it was held out by the company as a platform for that purpose. It seems 'to have been used mainly for freight. The evidence shows that passenger coaches overlap this platform several inches. Beyond the covering of the platforms, there is no plank on the cross-ties or sills of the bridge, but the spaces between are open. But by reason of the overlapping of the coaches there is no chance of a person on the platform getting into these spaces except perhaps between the coupling space between two cars. All the counts in the *narr.* charge the negligence to consist in leaving these cross-ties unplanked; and the plaintiffs have insisted that Barnard was at the place where he was found for the purpose of boarding the train and in the attempt fell and was killed by the train by reason of this neglect. Of this we have seen there was no proof, but it rests wholly in assumption. We have been cited to no provision of the defendant's charter obliging them to construct the bridge in a particular way which has been violated. There has been nothing introduced to show that this bridge, which was for railroad uses, was required to be made safe for people to walk over. There is no evidence that this bridge is not constructed in the usual way that railroad bridges are built, and that it was not well and safely constructed as and for such a bridge. The bridge is private property and we have been cited no law appropriating any part of it to use as a public highway for any other purpose than transit on the cars. The whole

County Comm'rs of Allegany County *vs.* McClintock.

case rested in conjecture and there was no case made for the jury. The cases in this State are numerous which decide that the *onus* of proving the negligence which occasions the injury sued for is on the plaintiff; and that there is no presumption of negligence. *Bahrs' Case,* 28 *Md.,* 647; *Foy's Case,* 54 *Md.,* 648; *State, use of Miller vs. B. & O. R. R.,* 58 *Md.,* 222; *Bacon's Case,* 58 *Md.,* 484, &c.

*Judgment affirmed.*

(Decided 2nd November, 1883.)