CHRISTINA McRAE, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 3, 1907.

1. **PERSONAL INJURY: Expert Evidence: Electric Shock.** Testimony showed that plaintiff in entering a street car stepped on a metal plate and received a shock and that she became disabled thereupon. *Held*, that a reasonable man of ordinary intelligence would infer without speculation or the aid of expert opinion that the subsequent condition points to the shock as the producing cause and the case was properly sent to the jury.

2. **PASSENGER CARRIERS:** Injured Passenger: Presumption: Negligence. The carrier is not an insurer of the passenger's safety and no presumption of negligence arises where the passenger is injured from some cause wholly disconnected with the operation of the vehicle and the burden is on the passenger to show the carrier's negligence. But where the injury arises by something improper in the conduct of the business the passenger need go no further, since a presumption of negligence arises.

3. **DAMAGES:** Personal Injury: Physical Inconvenience: Married Woman. A married woman may recover for personal inconvenience caused by negligent injury, since in actions *ex delicto* the fundamental principle for the measure of damages is adequate compensation for the entire injury sustained.

4. ———: ———: ———: ———: Pleading. The petition is held sufficient to sustain an instruction allowing recovery for personal inconvenience.

5. **PERSONAL INJURY:** Petition: Negligence. A petition is held to contain a sufficient allegation of negligence not only after verdict but against a demurrer or motion to make more definite, since a passenger is not required to set out the specified defects in the appliance of the carrier.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED.

*John H. Lucas, Frank G. Johnson* and *Ben. F. White* for appellant.

(1) Plaintiff utterly failed to show that any injuries she might be suffering from when examined by Dr. Hanawalt were caused by defendant. Unless this was done there can be no recovery; this was the principal issue in the case. (2) Instruction numbered one was erroneous in adopting the rule *res ipsa loquitur* in a case where the accident was to the passenger and not to the car. 6 Thompson on Neg., sec. 7637; Thomas v. Railroad, 148 Pa. 180, 15 L. R. A. 416; Keller v. Railroad, 149 Pa. 65; Barnard v. Railroad, 60 Md. 555; Railroad v. State, 71 Md. 599. (3) The petition is fatally defective in not alleging act of negligence, either by way

of commission or omission, on the part of defendant. This was a necessary averment.

*Boyle, Guthrie & Smith* for respondent, filed argument.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had judgment in the sum of one thousand dollars and defendant appealed.

In the afternoon of January 18, 1905, plaintiff while on her way to attend a social function, became a passenger on an electric car in operation by defendant on one of its lines of street railway in Kansas City. It was thawing and the soles of plaintiff's shoes had become wet from water and slush in the streets. As she entered the vestibule, she stepped on a metal plate and received a slight shock from electricity. The conductor who was standing near the rear door then cautioned her to "step high" but, observing no obstacle in the way, she proceeded to enter through the doorway and, in doing so, stepped on a metal plate at the threshold. According to her testimony, she received from this contact an electric shock of great severity. When asked to describe the effect of the shock, she said: "Well my limbs seemed to be of such size I could hardly move them and it ran clear through my whole body. It seemed as if my hair was just tearing out. I grabbed for the side of the door and screamed, and I think it was a conductor who was off duty, on the inside of the car, that grabbed my other arm to keep me from falling. The conductor that was on duty still held my arm and held me and helped me to the first seat I came to." She claims to have suffered intense pain and states that after becoming seated her "limbs kept jerking all the time; I kept them down and rubbed them. . . . They kept jerking upwards—

the cords seemed to draw under my knees and I couldn't straighten them out." She rode to her destination, left the car and walked to the home of her hostess where she remained several hours. The entertainment provided was a game at cards and plaintiff participated in the amusement. Several of the other guests called as witnesses agree that she appeared to be very nervous and to be suffering from pain in her legs. On returning home, her pain and nervous condition appeared to grow worse and she went to bed immediately. At various times during the night, simple remedies were applied to alleviate the pains. The next day, she found herself unable to attend to her household duties on account of the pain which then involved the back and head as well as the legs. On the following day, finding her condition unimproved and realizing her injury was more severe than she had supposed, she walked to the office of her family physician who made an examination and prescribed for her. After this, she returned home where she was confined to her bed for a period of three weeks. Her family physician continued to treat her but without success and in March following, another physician, a nerve specialist, was consulted. The examination made by him disclosed that the sensory nerves in the lower part of her legs were paralyzed, but as the motor nerves were not affected, the power of locomotion was not perceptibly impaired. All of the evidence of plaintiff on the subject tends to show that before the occurrence in question she was an unusually healthy and vigorous matron and that she did all of the housework, including washing for her family. After the occurrence her health was visibly impaired, she suffered much from pain and nervousness and was unable to attend to her household duties. This was her condition at the time her case was tried.

One of the physicians who treated plaintiff and was called by her as a witness testified, on cross-exami-

nation, in part as follows: "Q. How would you expect Doctor, that a person in passing into a street car and stepping on to some metal part of the car and receiving a shock thereby and was able to go on and spend an afternoon playing cards and back to her home and able a day or two later to proceed to the office of a physician — would you say, Doctor, that that shock was of any great severity, leaving a person so they could do those things? A. Well, it evidently was not sufficient to incapacitate them for locomotion at once. I don't know what there might be afterwards. There are results sometimes from a shock, a nervous condition may come up, due to any physical shock."

The foregoing statement of facts is collected from the evidence introduced by plaintiff. On the part of defendant, it was conceded in the testimony that the metal plate from which plaintiff claims to have received the severe shock was charged with electricity, and that fact was known to the conductor at the time she entered the car. It is also admitted that she stepped on the plate and received a shock therefrom, but it is claimed that it was mild, and the medical witnesses introduced assert that it could not have produced the injurious effects claimed by her. At the end of the run, the car was put out of service for examination and repairs and the inspection which followed disclosed that mud had collected between one of the wires used in the transmission of power to the machinery and the under side of the car, in a way to afford a good conductor of electricity between the wire and the screws which served to fasten the plate. It was claimed by the expert witnesses of defendant that this was an occurrence which could not be anticipated nor prevented in the exercise of the highest degree of care.

Defendant complains of the action of the court in refusing its request for an instruction in the nature of a demurrer to the evidence, and argues that the case should

not have been submitted to the jury for the reason that the evidence most favorable to plaintiff fails to show with reasonable certainty that the physical disorder from which she has continuously suffered since the occurrence in question was the result of the electric shock. The argument is founded on a claim that in the examination of the medical witnesses introduced by plaintiff, no attempt was made to elicit an expert opinion that her condition could have been produced by a shock of the nature described by her. Counsel for plaintiff propounded a hypothetical question to one of her expert witnesses which called for an opinion on this subject, but as the witness had been called out of time, the court sustained an objection made by defendant on the ground that a proper foundation for the question had not been laid, and the witness was excused and not recalled. We find, however, in the testimony of the medical experts, the opinion expressed that the condition of ill health into which it is apparent plaintiff has fallen, is to be attributed to a nervous derangement consequent on a severe shock, and we think that without the aid of expert opinion, a reasonable man of ordinary intelligence could infer, without going into the field of speculation or conjecture, that the appearance, in a strong, healthy person, of symptoms of a severe nervous impairment immediately following the reception by that person of an electric shock of great severity, points to the injury as the producing cause. We readily concede the duty is on plaintiff to show by evidence a direct connection between the injury she avers was negligently inflicted on her by defendant and the injurious consequence she claims was the resultant of that injury, and that the jury must not be permitted to resort to conjecture to supply a link in the connecting chain between cause and effect. But in the proper discharge of her burden of proof, it was not indispensable for plaintiff to fortify her contention by the opinion of experts. Opinion evi-

dence, at best, is but advisory, and owing to the proneness of experts, especially doctors, to disagree, its probative value is of a low degree and it may be disregarded entirely by the jury. There are cases where the subject of inquiry being a matter exclusively of expert knowledge, the production in evidence of such knowledge is essential to the maintenance of a fact elemental to the cause of action asserted, but where the subject is one of common as well as expert knowledge, the facts in evidence from which an expert opinion may be drawn respecting the subject may be analyzed to a conclusion by the triers of fact without the aid of expert opinion. It is a matter of common knowledge that the nervous system is subject to impairment either by disease or as the result of a severe physical shock, and that when the body is stricken by a strong current of electricity, one of the most common results is a severe shock to the nervous system. Presumably possessing knowledge of these facts, the jury having before them the further facts that plaintiff did sustain an attack from an electric current of high power, and that this was followed by a partial paralysis of the sensory nerves, the evidential chain was completed and the jury was entitled to indulge in the conclusion, as a reasonable inference from all the facts and circumstances in evidence, that plaintiff had sustained a physical injury as the direct result of the electric shock. The demurrer was properly overruled.

Objection is made by defendant to the charge given in the instructions asked by plaintiff that "If the jury believe from the evidence that plaintiff received an electric shock while a passenger on said car (if you believe she was a passenger thereon) the presumption is that this shock was occasioned by some negligence of the defendant, and the burden of proof is cast upon the defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its

part." Counsel argue that "negligence on the part of the carrier cannot be presumed from the fact of an accident and an injury to a passenger" (Yarnell v. Railway, 113 Mo. 570) and that "to say that the defendant is bound to excuse his fault before he is shown to have been guilty of one is nonsense" (6 Thompson on Negligence, section 7637) and, finally, "where the accident is to the passenger and not to the train, no presumption of negligence on the carrier's part can arise," citing Thomas v. Railway, 148 Pa. 180; Keller v. Railway, 149 Pa. 65; State, Bernard v. Railway Co., 60 Md. 555; Railway Co. v. State, 71 Md. 599.

The first of these two propositions we concede without comment. As to the other, the principle invoked is somewhat inaccurately stated. No presumption of negligence on the part of the carrier arises in cases where the passenger is injured by some cause wholly disconnected from the operation of the vehicle in which he is riding. Thus, if he is injured by a missile projected from outside of the vehicle, the carrier cannot be held liable except on the showing that the injury was the result of some negligent act connected with the transportation. The carrier is not an insurer of the safety of the passenger, and is liable only for injuries inflicted by its negligence, and the burden of proof always is on the passenger to establish the fact of the carrier's negligence by evidence. But where the passenger shows that his injury was caused by some breaking of machinery, a collision, derailment of cars, or something improper or unsafe in the conduct of the business or in the appliances of transportation, he needs go no further since from any such happening a presumption of negligence on the part of the carrier arises. [Thomas v. Railway, supra; Clark v. Railway, 127 Mo. 197; Goodloe v. Railway, 120 Mo. App. 194; Bowlin v. Railway, — Mo. App. —.] The conceded facts demonstrate that the shock was caused by a defective condition of one

of the appliances of transportation. The existence of a highly electrified metal plate in the passage way for passengers constituted such a defect and the burden was cast on defendant to show that its presence could not have been detected and prevented by the exercise of the highest degree of care. The instruction under consideration correctly enunciated the rule applicable to the facts of the case.

In the instruction on the measure of damages given at the request of plaintiff, the jury was told that "if you find for the plaintiff you will assess her damages at such sum as you believe from the evidence will compensate her for the bodily pain (if any) and mental anguish (if any) and *personal inconvenience* (if any) which you believe from the evidence she has suffered as the direct result of the injuries (if any) received by her as the direct result of the negligence (if any) of the defendant," etc. Defendant insists that the damages allowed in the italicized clause do not constitute an element of her right of recovery and further that the existence of such damages is not specifically alleged in the petition. There is no suggestion in the instruction that plaintiff should be awarded compensation for time lost from household work. The value of such time was a loss sustained by her husband, for the recovery of which he, alone, had a cause of action, but, as Judge ELLISON well observed in Cullar v. Railway, 84 Mo. App. 346, the fact that the husband is entitled to recover for the loss of the wife's services "will not prevent her from recovering for all those things which injured her apart from the mere loss of service and society to which her husband is entitled. Physical disability is a personal loss apart from being a mere deprivation of a money earning power."

To impair the power of a person whether of body or mind is an injury to personal right wholly apart from any pecuniary benefit that may be derived from

the power. [Perigo v. St. Louis, 185 Mo. 1. c. 289 ; Beck-
er v. Real Estate Co., 118 Mo. App. 74.] Recently the
St. Louis Court of Appeals approved an instruction
which permitted the plaintiff to recover damages for
"physical inconvenience" resulting from an injury.
[Costello v. Transit Co., 119 Mo. App. 391, 96 S. W.
425.] The conclusion reached in that case is abundantly
supported by the authorities, and the rule appears to be
quite generally recognized that "inconvenience amount-
ing to physical discomfort is a subject of compensation"
and, independently of the question of loss of power or
earnings, will afford an element of a right of recovery
inuring to a married woman from a personal injury
negligently inflicted upon her. In awarding damages
in actions *ex delicto* the fundamental principle to be
followed is adequate compensation for the entire in-
juries sustained. Physical or personal inconvenience,
(the terms are synonymous) resulting from physical
disability, belongs to the same class as pain and suffer-
ing and to deny plaintiff the right to recover for such
damage would be to withhold from her full compensa-
tion for the injuries sustained.

It is alleged in the petition that "by reason of the
electric shock so received by plaintiff as aforesaid, she
suffered the following injuries: Her lower limbs were
partially paralyzed, her nervous system injured and
diseased and that as the result of such injuries she suf-
fers severe pains in her back and head and her lower
limbs have been weakened . . . as a result of such
injuries, she was for a considerable period of time con-
fined to her bed and that she is now, as a result of said
injuries, unable to perform her household duties . . .
that her injuries are permanent and that she will al-
ways suffer pain both physical and mental as the direct
result of her said injuries." These averments are broad
enough to include damages on account of physical in-
convenience. The allegation that plaintiff was and will

continue to be unable to perform her household duties and that she suffers and will continue to suffer pain are equivalent to the charge that she is inconvenienced.

Finally, it is urged that the petition fails to allege any act of negligence on the part of the defendant. It is charged that "as plaintiff was passing over the floor of the rear vestibule of said car toward the doorway thereof in the usual and ordinary manner for the purpose of taking a seat in said car, she received a severe electric shock which injured her as hereinafter more fully described . . . that said shock was caused by the negligence of the defendant in that said car and said car line were negligently constructed, maintained and operated by the defendant and said shock was the result of such negligence." Not only is the allegation sufficient after verdict, but it could not have been successfully attacked either by demurrer to the petition or by motion to make more definite and certain. It is not required of a passenger who is injured by some casualty to the vehicle or by some defect in the appliances used in the transportation to allege the specific act of negligence which brought about the casualty. The averment that he was injured by a collision, derailment, breaking down of vehicle, or by a defect in a given appliance, coupled with a general allegation of negligence, is enough to state a cause of action.

The judgment is affirmed. All concur.