SYBEL S. WILKERSON, by next friend, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 4, 1907.

1. **PERSONAL INJURY:** Permanency: Measure of Damages: Evidence. To authorize a recovery for apprehended future consequences of a personal injury, negligently inflicted, it devolves on the plaintiff to produce evidence from which the inferences may be reasonably drawn that injurious consequences are reasonably certain to follow, and the jury cannot be permitted to speculate on imaginary contingencies. There must be evidence of permanent physical impairment as a result of the injury.

2. ——: ——: ——: ——: Expert. When the subject is one of common as well as expert knowledge, the facts in evidence from which an expert opinion may be drawn respecting the subject may be analyzed to a conclusion by the triers of fact without the aid of expert opinion.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*John H. Lucas, Frank G. Johnson* and *Ben F. White* for appellant.

The court erred in giving instruction numbered 8P for plaintiff, on the measure of damages. The evidence is clear and conclusive that plaintiff was attended only two weeks by a doctor, and that at the time of the trial she had fully and completely recovered. There being

no evidence on which to base this instruction, it was error to have given it.  Batten v. Transit Co., 102 Mo. App. 285; Albin v. Railroad, 103 Mo. App. 308; Schwend v. Railroad, 105 Mo. App. 534; Walker v. Railroad, 106 Mo. App. 320; Holden v. Railroad, 108 Mo. App. 665; Pentoney v. Transit Co., 108 Mo. App. 681;  Ballard v. Kansas City, 110 Mo. App. 391; Hass v. Railroad, 111 Mo. App. 707; Caplin v. Railroad, 114 Mo. App. 256; Steinman v. Railroad, 116 Mo. App. 673; Smedley v. Railroad, 118 Mo. App. 103; Dean v. Railroad, 199 Mo. 386, 97 S. W. 910.

*John L. Wheeler* and *John C. Nipp* for respondent.

The court did not err in giving the instruction complained of on the measure of damages.  There was evidence to show some permanency in the injuries.  The amount of the verdict, however, showed the jury did not take into consideration the permanency of the injuries. O'Connell v. Railway, 106 Mo. 4; Rodney v. Railway, 127 Mo. 676; Bright v. Kansas City, 187 Mo. 694; Reynolds v. Transit Co., 189 Mo. 408; McKinstrey v. Railway, 108 Mo. App. 19; Lacland v. Mining Co., 110 Mo. App. 640; Nelson v. Railway, 113 Mo. App. 711; Caplin v. Railway, 114 Mo. App. 260; Kelly v. Light Co., 115 Mo. App. 654.

JOHNSON, J.—Plaintiff, an infant, sues by next friend to recover damages for personal injuries alleged to have been sustained by her in consequence of the negligence of defendant.  The jury gave her a verdict for $300.  After ineffectually moving for a new trial and in arrest of judgment, defendant brought the case here by appeal.  Plaintiff, at the time of her injury, which occurred on September 18, 1904, was between two and three years of age, and was living with her mother on East Eighth street in Kansas City.  Defendant was operating a double-track line of street railway along that

thoroughfare. The child, in playing, had escaped the watchfulness of its mother for a few moments and gone into the street in front of its home. When discovered, it had left the sidewalk and was approaching the south track of defendant's road. The mother, warned by the screams of a neighbor that the child was in danger, ran out to bring it back, but it was then on the track and, before she could reach it, was struck by a rapidly moving east-bound car and was injured.

As the only claim of error now urged relates to the instruction given for plaintiff on the measure of damages, it is not necessary to go into the subject of defendant's negligence. That instruction is as follows: "If you find for the plaintiff you will, in assessing her damages, take into consideration her age, the injuries sustained by her, if any, by reason of her being struck by said car, the physical pain, mental anguish, if any, suffered by her by reason of such injuries and such damages, if any, of the nature above specified as you believe from the evidence she will sustain in the future as the direct effect of such injuries, and assess the same in such amount as, under all the facts and circumstances shown in evidence, will be just and reasonable compensation to the plaintiff, not exceeding the sum of five thousand (5,000) dollars."

It is contended by defendant that all the evidence shows conclusively that at the time the cause was tried, plaintiff had completely recovered from her injuries and, therefore, that the jury should not have been permitted to assess damages for future consequences which might result, but which were not shown to be reasonably certain to follow. The severe nature of plaintiff's injuries appears from the testimony of the physician who was called in immediately to treat her: "She had a lacerated hand, and very deeply lacerated, requiring three of four stitches, extending clear across—not entirely across the hand, almost across the hand, down as far as the tendons,

and she had a number of bruises on the head; the skin was eroded in various places on the head, all over the head, among the hair and forehead; she must have had a dozen or two bruises, the size, some of them, the size of a dollar, and some of them smaller; she had some kind of internal injury in the skull, probably a rupture of a blood vessel, or a number of blood vessels, concussion of the brain; she had some bruises also on her side. . . . Q. What kind of treatment did you give her? A. Well, I found her in a condition of shock; when I reached the place, her heart was almost failing; she was unconscious and panting very rapidly, and I had to give her stimulating treatment first, and about midnight we had other complications to contend with; she went into spasms. She showed some signs of consciousness before that, but frequently would relapse, though into unconsciousness, and I expect about midnight, she had been unconscious for sometime in that attack, and she was seized with convulsions on the right side, and every muscle on her body went into a convulsion, every muscle in the right half of her body went into convulsions; I don't remember about the face, now, but every muscle of the right side of her body was in violent spasm, jerking backwards and forwards; the left side of her body was in what we call a rigid spasm, meanwhile, and it became so violent, I called for consultation, and sent for one of our good surgeons, Dr. Neff, and we determined upon a sedative treatment, and to hold an operation in abeyance. There seemed to be some suspicion of fracture of the skull, possibly of the internal plate, but we were not able to determine positively; we had a bruise over the left frontal eminence, which was very hard to diagnose for awhile, but we feared it was a fracture; on account of the edema of the parts, it was necessary to postpone manipulating her until we decided to put her on the operating table, but it was finally decided it was unnecessary to put her on the

operating table, because she finally ceased to have her spasms. Well, after the spasms of the right side ceased, the muscles of the left half of the body began spasmodic contracting, and then she went into a rigid spasm, all the muscles of the body. Then she was in delirium. I believe she came to consciousness about some time in the morning, six o'clock, I expect, and we considered the indications against an operation, so we performed no operation. Of course, as to what internal injuries there were, not having X-Ray eyes, it would be hard for a physician to say exactly."

Non-professional witnesses introduced by plaintiff pictured the right side of her skull as being "mashed into her brains," and stated that she did not recover consciousness for two days. She remained under the physician's care for, perhaps, two weeks, mended rapidly and, at the time of the trial, which occurred in January, 1906, apparently had fully recovered, except in the particulars we are about to note. Her hand still showed effects from the injury but the most serious symptom of physical impairment is disclosed in the testimony of a number of plaintiff's witnesses who knew her before she was injured and who continued to have her under observation. They agreed that after her apparent recovery she was very nervous, peevish and irritable, a condition which did not become manifest until after the injury.

To authorize a recovery for apprehended future consequences of a personal injury negligently inflicted, it devolves on the plaintiff to produce evidence from which the inference reasonably may be drawn that injurious consequences are reasonably certain to follow. The jury should not be permitted to speculate on what may or may not happen under imaginary contingencies. There must be evidence of a present physical impairment as a resultant of the injury, else there is no foundation on which to build an inference that the plaintiff will

suffer future damages. [Wilbur v. Railway, 110 Mo.
App. 689; Ballard v. Kansas City, 110 Mo. App. 391;
Albin v. Railroad, 103 Mo. App. 308; Schwend v. Transit Co., 105 Mo. App. 534; Halley v. St. Joseph Light Co.,
115 Mo. App. 652.] But we cannot agree with defendant that the evidence shows that plaintiff had completely
recovered from her injury at the time of the trial. To
the contrary, the fact quite clearly appears that the profound nervous shock to which she was subjected produced a lasting and highly injurious effect upon her nervous system. It is true, her physician would not express
an opinion that would connect her nervous state with the
injury to her head, but with or without the aid of
expert opinion, or even in the face of adverse opinion,
we think a reasonable man of ordinary intelligence could
infer, without going into the field of speculation or conjecture, that the appearance in a healthy infant of plaintiff's years, of symptoms of nervous derangement following the reception by that person of a traumatic shock
to the brain of the intensity described in the evidence,
points to the injury as the producing cause of that condition and further indicates that a lasting injury has
been inflicted. As we recently observed in the case of
McRae v. Railway, 125 Mo. App. 562, 102 S. W. 1032:
"Where the subject is one of common as well as expert
knowledge, the facts in evidence from which an expert
opinion may be drawn respecting a subject may be analyzed to a conclusion by the triers of fact, without the
aid of expert opinion. It is a matter of common knowledge that the nervous system is subject to impairment
either by disease or as the result of a severe physical
shock and that when the body is stricken by a strong
current of electricity, one of the most common results
is a severe shock to the nervous system." So it is a
matter of common knowledge that the brain is the head
of the nervous system and that when it receives an injury of a permanent nature, one of the usual manifesta-

tions is the exhibition of nervousness and extreme irritability. In Wilbur v. Railway, supra, we observed that "notwithstanding the adverse opinion of his medical experts, had his injuries themselves been of such nature as to make their permanency apparent to a person of ordinary intelligence, the plaintiff would have been entitled to have this fact considered by the jury as an element of damage."

The learned trial judge committed no error in submitting to the jury the issue of future consequences.

From the small amount of the verdict, we would be justified in saying that the jury evidently did not allow any damages of the character under consideration, but we prefer to dispose of the case on the conclusion that the assessment of such damages is supported by substantial evidence.

-The judgment is affirmed.   All concur.