## WILLIAM PERCELL, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 1, and June 24, 1907.

1. **STREET RAILROADS: Operation: Care: Knowledge.** In the operation of its cars it is the duty of a street railway to construct and equip the same so that they may be readily controlled in all situations reasonably to be anticipated; and the operators should know the conditions under which they are acting and exercise care to meet the exigencies of such situations, such as slippery tracks and the like.

2. ————: ————: ————: **Overloading.** The operators of a street railway should not permit them to be overloaded so as to render their operation difficult and dangerous.

3. ————: **Pleading: Negligence.** Where a petition alleges specific acts of negligence as a ground of recovery such acts should be proved as pleaded; and an averment that by reason of negligence in the operation of a street railway line, its equipment and its trains the defendant negligently failed to stop one of its trains at a street crossing, is sufficiently broad to include a premature start at a hill top, too rapid rate of speed in a descent, handling of the brakes and the failure to apply sand to the rails and overloading of the cars.

4. ———: **Street Crossings: Traveler's Duty: Contributory Negligence.** The traveler on approaching a street crossing of a railway should ascertain whether his safety is threatened and act with reasonable care to avoid danger and so continue until he passes beyond its range; but he has a right to presume that a street car company will exercise reasonable care in approaching the crossing; but on a busy street he is not compelled to keep his eyes on an approaching car, and the evidence does not show contributory negligence as a matter of law.

5. ———: **Negligence: Custom: Pleading: Evidence: Instruction.** A practice must be unvarying and notorious before it can be relied upon as a custom governing the actions of men; and one relying thereon must plead and prove the existence of the custom, his reliance on its observations by the defendant and that he was reasonably justified in his reliance, and though such facts be pleaded and proved they must likewise be submitted to the jury on instructions, and a defect in an instruction is regarded as not amounting to a mere non direction.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

REVERSED AND REMANDED.

*John H. Lucas, Chas. A. Loomis* and *Ben F. White* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence at the close of plaintiff's testimony. Cogan v. Railway, 101 Mo. App. 190; Stokes v. Burns, 132 Mo. 223; Smith v. Railway, 113 Mo. 70; Hite v. Railway, 130 Mo. 141; Jackson v. Hardin, 83 Mo. 186; Powell v. Railroad, 76 Mo. 80; Reichenbach v. Ellerbee, 115 Mo. 588. (2) The court erred in giving the instructions asked by plaintiff. They are misleading and erroneous, ignoring some of the vital issues raised by the pleadings, and leave the jury to grope in the dark as to the elements or measure of damages. Hoffman v. Railway, 51 Mo. App. 279; Schaub v. Railway, 106 Mo. 74; Parsons v. Railway, 94 Mo. 286; Thomas v. Babb, 45 Mo. 384; 50 Mo. App. 240; 80 Mo. App. 239; Blashfield on Instructions, sec. 391.

*Boyle, Guthrie & Smith* for respondent.

(1) Giving improper instructions. Montgomery v. Railway, 181 Mo. 500; Railroad v. Lindeman, 143 Fed. 949.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had judgment in the sum of five hundred and eighty-seven dollars and the case is here on defendant's appeal. The injury occurred about eleven o'clock in the evening of January 21, 1904, at the intersection of Ninth and Walnut streets in Kansas City, a locality in the heart of the business district. Defendant, at the time, was operating a double-track line of street railway on each street, that on Ninth street being a cable road. The course of Ninth street is in an east and west direction, and from a point one block east of Walnut street to a point one block west thereof, runs down a steep hill. Walnut street runs north and south, is practically level, and to the extent of its width, forms a break in the declivity of Ninth street, at their intersection. Plaintiff, a hackman, had delivered a passenger to a hotel on Walnut street, and driving south on that thoroughfare, along the west side of its roadway for vehicles, approached the Ninth street crossing. The north track on the Ninth street line was used by west-bound cars, and, just before his horses reached that track, plaintiff looked eastward to see if a train was approaching thereon, and discovered that such was the fact. A train, consisting of a gripcar and trailer, was coming down the hill, and was then some thirty or forty feet east of the property line on the east side of Walnut street. It is charged in the petition and conceded in the evidence that defendant had established the custom of stopping its west-bound trains before crossing the tracks on Walnut street. Plaintiff, knowing of this custom, and having ample time in which to cross in safe-

ty should defendant continue to observe it, checked the speed of his team from that of a slow trot to a walk, and drove on. When he got to a point where the front end of his carriage was over the north rail of the north track, he became aware that the operators of the train, in violation of the custom, were proceeding to the crossing without stopping, and that a collision was imminent. He attempted by stopping, backing and turning, to get out of the way, but before this purpose could be accomplished, the gripcar struck the front end of the carriage, and the injury followed.

The fact that the train did not stop at its accustomed place is conceded by defendant, and an attempt is made to excuse the failure on the ground that under the peculiar conditions then prevailing, it was impossible for the gripman to make the stop, though he employed every possible means at his command to that end. It was shown that both cars composing the train were greatly overcrowded with passengers, and that the rails were encrusted with ice from sleet and rain which had been falling so that the brakes failed to bring it to a standstill as they would have done under ordinary conditions. After pleading the custom of defendant to stop its trains on the east side of Walnut street, and plaintiff's reliance on that custom, the specific negligence of defendant alleged in the petition is as follows:

"Defendant, although it saw or by the exercise of due care ought to have seen plaintiff in a position of peril in time to have stopped its train, without any warning to the plaintiff, by reason of its negligence in the employment and retention of careless and incompetent employees engaged in the construction, maintenance and operation of its line of said railway, and its equipment, its tracks and its trains and cars running thereon, and by reason of the negligence of defendant in the construction, maintenance and operation of its said line of street railway, its equipment, its tracks, and its trains and cars running thereon, negligently failed

to stop one of its said west-bound trains at the east line of Walnut street, and negligently failed to stop said train at all until it had negligently been permitted or caused to run across Walnut street to the west side thereof, and to come into collision with the plaintiff's hack and horses;" etc.

Plaintiff failed to introduce any evidence tending to show any defect in the track, cars or appliances used, or to show that the usual signals were not given as the train approached the crossing, but did adduce substantial evidence tending to show that the gripman was a raw hand, inexperienced and incompetent, and that he started the train down the hill in a negligent manner, and, in the descent, negligently handled the appliances provided for its control. It appears that on account of the steepness of the hill, the gripman was required to come to a stop before beginning the descent, and not to start until the conductor signalled him so to do, and it was the conductor's duty not to give the signal until he was at the hand brakes on the trailer prepared to use them, if necessary. Owing to the extremely crowded condition of the train, the conductor, when it was brought to a stop at the top of the hill, had difficulty in reaching his position, and the gripman started the car without signal, and had acquired some speed before he reached the handbrake. Further, it was shown that the gripman had detached his hold from the cable and set the brakes under his control in such a manner that they locked the wheels, causing them to slide on the rails, and that, had the brakes been set with less rigor, such coasting would have been avoided and the train could have been brought to a standstill at the accustomed place, notwithstanding the heavy load it carried. It is insisted by defendant that the learned trial judge erred in refusing to give an instruction in the nature of a demurrer to the evidence which it requested at the conclusion of the evidence.

In disposing of the questions presented by the demurrer, we will discuss first that of defendant's negligence. It is not claimed that the weather conditions which resulted in the production of a "slippery rail" were extraordinary or at all unusual. Defendant, in the operation of its cars, was called on to meet a situation of no greater difficulty than that to be expected from a winter storm of ordinary severity. In the operation of powerful and dangerous machinery over the public streets of a city, it is the duty of a street railway company so to construct its road and equip and operate its cars that the latter may be readily controlled by their operators under all conditions, and in all situations reasonably to be anticipated. It will not do to say that anyone has the right to turn loose an uncontrollable force in a public thoroughfare where people have a right to be. The gripman knew, or should have known, when he started the train down the hill that the rails ahead of him were slippery, and that greater care would be required in the making of a proper descent than would be necessary if the rails were dry. He should have exercised the highest degree of care to meet the exigencies presented by that condition. [Goodloe v. Railway, 120 Mo. App. 194; 96 S. W. 482.] Defendant does not contend that the brakes and other equipment provided were inadequate to the task of keeping under control, on a slippery track, a train carrying an ordinary load, but argues that the unusually heavy load of passengers on this particular train, together with the condition of the track described, made the accomplishment of the task impossible.

This argument, instead of excusing the conduct of defendant, accuses it of negligence. Defendant, and its servants in charge of the train, must be presumed to have known the extent of the load they could carry in safety down that hill in the existing weather conditions. The fact that passengers crowded into the cars

to the point of dangerously overloading them was not the fault of the passengers, but of defendant. It not only was the right but the duty of defendant to limit the load of the train to safe proportions. Passengers boarded the cars at the invitation of the carrier and on the implied assurance that the highest degree of care was being exercised to afford them safe transportation. The same assurance was being held out to travelers on the public thoroughfares traversed by the cars. They had the right to presume that defendant would not negligently overload its cars and thereby imperil the safety of its passengers as well as that of themselves. From whatever standpoint the facts before us are viewed, the negligence of defendant is apparent. Whether the failure to stop was caused by the incompetence or negligence of the gripman in his handling of the appliances at his command, or by the act of permitting the train to become overloaded, the conduct of defendant in thus endangering the safety of others is equally censurable in law.

But, it is argued by defendant that specific acts of negligence are charged in the petition, and plaintiff failed to show that the injury resulted from any of them. It must be conceded that "when the plaintiff chooses to allege in his petition the specific acts of negligence of which he complains, he assumes the burden of proving them, and, as in other cases must recover, if at all, upon the negligence pleaded." [Hamilton v. Railroad, 114 Mo. App. 504; Orcutt v. Century Bldg. Co., 201 Mo. 424; 99 S. W. 1062.]

Turning to the petition, we find the averments relating to negligence in the operation of the train to be of the most general character. "And by reason of the negligence of defendant in the . . . operation of its said line of street railway, its equipment . . . and its trains and cars running thereon, negligently failed to

stop one of its westbound trains at the east line of Walnut street," etc. This charge embraces the widest possible scope. In it are included all of the acts of defendant pertaining to the operation of the particular train that could have any bearing on the failure to make the stop in question; such as the making of a premature start at the top of the hill; permitting the train to attain a too rapid rate of speed in the descent; the negligent handling of the brakes; the failure to apply sand to the rails to prevent the wheels from sliding on them, and the negligent overloading of the cars. The evidence of both parties clearly demonstrates that the proximate cause of the failure to stop at the accustomed place is to be found in one or more of the acts just enumerated, and all of them being included within the scope of the negligence averred, the negligence of defendant is so apparent that it cannot be regarded as a subject of controversy, and it remains to be seen if the learned trial judge properly sent to the jury, as one of fact, the issue of whether or not the negligence of defendant was the sole producing cause of plaintiff's injury. No error was committed in submitting this issue to the jury, unless it should be said, as a matter of law, that plaintiff himself was guilty of negligence directly contributing to the production of his injury.

It is the duty of a traveler on a public street, in approaching a railway crossing, to make a reasonable use of his senses of sight and hearing, before entering into the sphere of danger, to ascertain whether the safety of his passage over the crossing is threatened by approaching cars, and to act with reasonable care to avoid an encounter with present danger. This duty continues from the time the traveler approaches danger until he passes beyond its range. In the exercise of reasonable care, he cannot give a last look just before reaching the danger line and then, relying on the presumption that the operators of an approaching train are in the exer-

cise of reasonable care in its operation, or on nice calculations of his chances of crossing in safety, shut his eyes and proceed blindly forward. [Cole v. Railway, 121 Mo. App. 605, 97 S. W. 555.] But a traveler has the right to presume that operators of approaching trains or cars are exercising and will continue to exercise reasonable care in approaching a crossing. And, while this presumption does not absolve him from the duty of using his senses for his own protection, still, where the appearances disclosed to reasonable observation do not indicate the presence of negligence, he has the right to continue to indulge in the presumption stated and to act thereon. The evidence shows that the practice of stopping its westbound trains at the east line of Walnut street had become an invariable custom of defendant, which was well known to the general public, including plaintiff. Indeed, the physical facts disclosed indicate that the custom resulted from necessity. The presence of a large volume of travel on Walnut street, the intersection of other street car lines, the sharp declivity in Ninth street immediately west of Walnut street, made it impracticable to do otherwise than to stop at the east line of Walnut street. All of these facts were known to plaintiff, and certainly he was justified in believing that on this occasion, the train would make the accustomed stop unless there was something in the appearance of the train to indicate to one in his situation that the custom was not being observed. Plaintiff says that when he saw the train thirty or forty feet from the stopping place, he supposed it would stop. It was going rather fast, but not so fast as to indicate to him that it would not or could not stop. He started to the crossing and momentarily took his eyes from the train to look ahead. In doing this, he arrived in a position of actual danger from which he could not be extricated. He did not hear the warnings which defendant's witnesses say were given, until after he had reached his perilous position.

In giving due weight to his testimony, we do not think we are justified in pronouncing him negligent in law. With nothing in the appearance of the train to disclose that it was beyond control, and with every reason to think it would stop at the accustomed place, it was not negligence *per se* for plaintiff, who, under the conditions presumed, had abundant time to clear the crossing, momentarily to withdraw his eyes from the train. In the exercise of reasonable care, the driver of a vehicle along a busy street has many things to engage his attention. It was just as essential for plaintiff to keep the way in front of him under his observation, as it was to look out for danger in the direction from which the train was coming. To say that he should have kept that train under constant scrutiny during every moment of his crossing would be to say that he had no right to rely at all on the presumption that it would stop in accordance with invariable custom, when every appearance indicated that it would make the stop. To impose such a burden on him would be holding him, not to the observance of the degree of care and caution to be expected of an ordinarily careful and prudent person, but to the exercise of extraordinary care. The classification of plaintiff's conduct should be regarded as a question of fact for the jury, not of law for the court.

The views expressed necessitate the holding that the learned trial judge committed no error in overruling the demurrer to the evidence.

Defendant objects to the first instruction given by the court on behalf of plaintiff. It is as follows: "If you believe from the evidence that at the time plaintiff claims to have been injured it was the custom of the defendant to stop all of its westbound Ninth street cable trains at the east side of Walnut street, and that on this occasion one of its trains failed to stop at that point, but ran on and collided with plaintiff and thereby injured him, and that such failure to stop said train was

the result of negligence on the part of said defendant, and that plaintiff himself at the time was not guilty of contributory negligence, then your finding should be for the plaintiff. Negligence is the failure to use such care as would be used by an ordinarily prudent person under the same or similar circumstances."

An instruction which, on an assumed hypothesis, directs a verdict for the plaintiff, to be free from criticism, should contain all of the ingredients essential to the right to a recovery under the pleadings and evidence. [Budd v. Hoffheimer, 52 Mo. 297; Boothe v. Loy, 83 Mo. App. 601; Hohstadt v. Daggs, 50 Mo. App. 240; State v. Davies, 80 Mo. App. 239; Blashfield on Instructions, section 391.] Plaintiff in the instruction before us predicates his right to recover on defendant's negligent breach of a custom. He claims, and the fact is conceded by defendant, that the practice of stopping trains at the east line of Walnut street had continued for so long, and was so unvarying and notorious that the railway company on the one hand and the traveling public on the other, were presumed to know of its existence, to rely on its continuance, and to govern their actions accordingly. A practice not uniform, and which has not been of sufficient duration nor performed under circumstances to make it a matter of general notoriety, does not arise to the dignity of a custom, and until it attains that dignity, it cannot afford, in law, a rule of conduct. The facts before us show the existence of a custom under this definition, but it does not follow, because plaintiff was injured in consequence of defendant's negligent breach thereof, he is entitled to recover. He must plead and prove that he knew of the existence of the custom, relied on its observance by the defendant in the particular instance, and under the circumstances open to the observation of an ordinarily careful and prudent person in his situation, was justified in acting on the supposition that the train would make its usual

stop.   Plaintiff did plead and prove these facts, but the instruction under consideration omits them from its hypothesis.   Under the direction given, the jury could have found a verdict for plaintiff, despite the further finding that he had no knowledge of the existence of the custom, or that if he did possess such knowledge, he knew from the speed of the train, or the manner of its operation that it could not stop, but placing no reliance on the observation of the custom in that particular instance, nevertheless, proceeded on the supposition that he had ample time in which to accomplish the crossing in safety.   The defect in the instruction is not to be regarded as consisting of a mere non-direction, nor as one cured by correct instructions given on behalf of defendant.   It is a positive misdirection, since it requires a verdict for plaintiff on the ground of the negligent breach of a custom by defendant without requiring the jury further to find that the existence of the custom had any effect at all to induce him to enter into a danger he otherwise would have avoided.

This error being prejudicial, the judgment must be reversed, and the cause remanded.   All concur.