M. J. HARRINGTON, Appellant, v. R. J. DUNHAM et al.

Division Two, February 16, 1918.

1. **CONTRIBUTORY NEGLIGENCE: Crossing Street-Car Track: Presumption.** Any person approaching a street car track has a right to presume that those operating cars on the track will exercise ordinary care to avoid striking any one who may be about to cross, and to act upon that presumption.

2. ———: ———: ———: **Driver of Wagon.** The driver of a wagon on a public street, whose view was obstructed by a power-house until his horses' feet were on the street-car tracks which crossed the street, had a right to presume that the motorman would perform his duty to stop his car where a sign required him to stop and where it was customary for cars to stop; he had a right to act

upon that presumption in approaching the track, and if there was nothing in the appearance of the car to indicate that it would not stop and he got upon the track before he discovered that the car would not stop, he was not guilty of contributory negligence as a matter of law.

3. ———: **Question for Jury: Instruction.** If the issue of the plaintiff's negligence is one which under the evidence should be submitted to the jury, an instruction which in effect directs them to find for defendant should not be given.

4. ———: **Instruction: Duty to Look and Listen: Superfluous.** If the evidence is undisputed that the driver of the wagon, at the first opportunity after he passed the power-house which abutted on the cross street and obstructed his view, looked for a car and saw one coming, and under the law he had a right to presume that it would stop before it attempted to cross the street, as it was required by the rules to do and as cars customarily did, and acting on that presumption he drove on, an instruction defining his duty to look and listen is superfluous, and one making it his duty to "get off of the track and let the car pass" is erroneous.

5. ———: ———: ———: **Must Be Caused of Injury.** An instruction which directs the jury to find for defendant if they find he did not look or listen for the approaching car, without also requiring them to find that he could have avoided the injury by looking, or by attempting to stop and clear the track after he saw the car, when he had the right to presume it would stop before attempting to cross, is erroneous

6. ———: **Must Be Pleaded.** The issue of contributory negligence is an affirmative defense, and the allegation asserting it should be as specific and direct as allegations of negligence in the petition. An allegation that "if the plaintiff received any injuries at the time mentioned in said petition the same were caused by his own fault and negligence" pleads no specific act constituting contributory negligence, and will not authorize the submission of that issue to the jury.

7. ———: ———: **Instruction.** And in view of such a plea, which in effect is no plea of contributory negligence at all, an instruction which requires the jury to find that "plaintiff himself was not negligent in any manner that contributed to the collision," is erroneous.

8. **NEGLIGENCE: Instruction: Speed: Misleading: Misdirection: Withdrawing Issue.** An instruction which tells the jury that "there is no evidence in this case that defendants were running the car in question at a negligent, careless or high rate of speed, and upon that issue your verdict will be for the defendant," being an attempt to remove from the jury the issue of excessive speed,

was erroneous for three reasons: *first*, it was ambiguous and misleading, in that it might be interpreted by the jury to mean that there was no issue before them as to whether the car was run at a careless rate of speed, or that in any event their verdict must be for defendant; *second*, it was confusing and a positive misdirection, in that it permitted two verdicts, one for defendant on that issue, and possibly another for plaintiff on other issues; and, *third*, it attempted to remove the issue of negligent speed from the jury, which was improper, since there was evidence that the car was running ten or twelve miles an hour at a point where the rules and safety required it to stop.

9. ————: **Excessive Speed.** It was a careless rate of speed for a street car to approach a safety stop where cars customarily stopped so fast that the motorman could not stop the car there, and to so run it that it must necessarily collide with any one who might happen to be on the track in the street at that place, unless such collision was caused by a "blowout of the overhead," and whether it was so caused is a question for the jury where the evidence is conflicting.

10. ————: Instruction: **Stopping Car: Relieving Defendant of Ordinary Care.** An instruction telling the jury that the issue of the motorman's duty to exercise ordinary care to stop the car, after he saw plaintiff in a position of peril, is withdrawn from their consideration, is error, where there is evidence tending to show that the motorman did not attempt to stop after he saw plaintiff's peril, or other evidence that he pursued an improper method to stop if he made any attempt at all.

11. ————: **Conflicting Instructions: Cure.** Instructions for defendant which present a wrong theory of the case to the jury are not cured by a single correct instruction given for plaintiff.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone*, Judge.

REVERSED AND REMANDED.

*John D. Strother, Ingraham, Guthrie & Durham* and *Hale Houts* for appellant.

(1) The court erred in giving instructions "AA" and "2," and each of them. These instructions withdrew from the consideration of the jury issues of negligence which plaintiff was entitled to submit. (a) By "AA" the court erroneously instructed the jury that defendants' motorman was guilty of no negligence after

he saw the plaintiff in a position of peril. This in effect told the jury that in determining whether or not the failure to stop at the safety was negligent, the jury could consider nothing the motorman did or failed to do after he saw the plaintiff in a position of peril; thereby withdrawing many acts of negligence of which there was ample evidence. Laison v. Transit Co., 192 Mo. 449. (b) The court erred in telling the jury in instruction "2" that there was no evidence that the car was being operated at a negligent, or careless speed. Even had there been no evidence of the rate of speed, the fact that the car crashed by the stop into plaintiff and carried the outfit to the far edge of the road, despite the motorman's efforts to stop, made the issue one for the jury. Heinzle v. Metropolitan, 182 Mo. 528; Beier v. Transit Co., 197 Mo. 215; Felver v. Met. St. Ry. Co., 216 Mo. 214; Brandt v. Railway Co., 153 Mo. App. 16. (c) From the undisputed evidence either one of two conclusions is irresistible, first, that the car was going too fast, or, second, that the motorman was negligent after he saw plaintiff in a place of peril. The motorman admitted that he knew of the safety stop, knew the track, was intending to make the stop, could see the crossing for 500 feet, and that plaintiff's horses came out from behind the power house upon the tracks before he began to use the appliances at hand to make the safety stop. Certainly, if the rate of speed of the car had not been negligent and the motorman had exercised ordinary care in the use of brakes and other appliances the safety stop would have been made. (2) The giving of defendants' instructions 4 and 6, constituted reversible error, for the reason they too broadly defined the issue of contributory negligence by the use of the words "any negligence" and "negligent in any manner." Benjamin v. Metropolitan, 245 Mo. 612; Williams v. Lamp Co., 173 Mo. App. 87; Miller v. Engle, 185 Mo. App. 580. (3) It was error to give instructions 5 (modified) and 8, for the reason that in these instructions the court ignored the safety stop custom and the right of plaintiff to presume that the custom would be

observed. Percell v. Met. St. Ry. Co., 126 Mo. App.
43; Scott v. Met. St. Ry. Co., 138 Mo. App. 196; Riska
v. Railroad, 180 Mo. 168, 190; Eckhard v. Transit Co.,
190 Mo. 593, 617; Moon v. Transit Co., 237 Mo. 425;
Taylor v. Met. St. Ry. Co., 166 Mo. App. 131. (4)
Instruction 8 was also erroneous for the reason that it
failed to require the jury to find that the plaintiff's
negligence therein submitted, if they should find any,
was the proximate contributing cause of his injury.
Oats v. Met. St. Ry. Co., 168 Mo. 535, 548; Gail v. Car
Co., 177 Mo. 427. (5) The instructions of defendant
when read together amounted in effect to a peremptory
instruction to find for defendants.

*Clyde Taylor* and *L. T. Dryden* for respondents.

(1) Instruction ''AA,'' given by the court of its
own motion, told the jury that the alleged negligent
act of failing to give signals was withdrawn from their
consideration as a ground of recovery. There are two
reasons why this was proper. (a) There was no evi-
dence of a failure to give the signals as the car approach-
ed the street. (b) Had no signals been given it would
have made no difference and such failure would not
have been the proximate cause, for the reason that ap-
pellant saw the car and knew of its approach; but as
he said relied entirely upon the custom to stop the car
before crossing the street road. A negligent act affords
no ground of recovery unless it is the proximate cause
of the injury. Jackson v. Butler, 249 Mo. 342; Strayer
v. Railway, 170 Mo. App. 514; Heinzle v. Railway, 182
Mo. 528; Lyman v. Dale, 156 Mo. App. 427; O'Connell
v. Railway, 149 Mo. App. 501; Hull v. Transfer Co., 135
Mo. App. 119. (2) The appellant cites but one case
in support of his criticism of this point. Latsin v. Trans-
it Co., 192 Mo. 449. This case is not in point at all, and
in that case the plaintiff was driving along the track a
distance of 469 feet in plain view of the motorman, and
vehicles going in the opposite direction prevented the
plaintiff in that case from getting off the track, and the
motorman had but to look to see the situation. While in

the case at bar, the plaintiff testified that his horses came upon the track when the car was just south of the power-house, and close to him, and then whipped his horses up, attempting to go on across the track. The motorman testified that as soon as he saw the horses' heads appear on the track, he attempted to stop the car, and put on the airbrake, but he saw it was not going to stop on account of the rail being slick, and it being down-grade, and then he released the air and reversed, and then had an overhead blowout. The evidence in the case corroborated the motorman and showed that the collision was unavoidable so far as he was concerned, and due to this overhead blowout, and also to the contributory negligence of the appellant in driving his team on or across the track when he saw the car close to him, when by stopping he could have avoided the collision. (3) There was no evidence whatever that the car was being operated at a careless or high rate of speed. This being one of the distinct acts of negligence alleged in plaintiff's petition, and there being no evidence of any kind or character to support it, it was the duty of the trial court, upon motion of defendant, to eliminate this ground of recovery from the consideration of the jury, which he did. (4) But had there been evidence that the car was being operated at a high rate of speed, in order that it might be the proximate cause of the accident, it would have to be shown that the appellant had knowledge of the regular and ordinary rate of speed of the car, and that he relied upon the car being operated at this rate and was thereby entrapped or deceived into driving upon the track. See authorities above cited. (5) All the instructions in a case must be read together, and if when so read as a whole they fairly present the issue, this is sufficient. This is clearly true in this case, as will be shown by reference to several instructions given in the case. The evidence showed that appellant was negligent in attempting to cross the track in front of the car, relying wholly and entirely upon the safety stop. The case was tried and submitted upon this theory. (6) Instructions 5 and 8 pointed out the

negligent acts of appellant, if the jury believed from the
evidence him to be guilty of such acts as would preclude
a recovery.   So that the particular acts of negligence
upon the part of the appellant were clearly and properly
set forth in these instructions, and when all the instruc-
tions are read together, they surely could not have been
misled.   Hoover v. Coal Co., 160 Mo. App. 326; Wilson
v. United Rys., 169 Mo. App. 405; Jackson v. Telegraph
Co., 174 Mo. App. 70; Patterson v. Evans, 254 Mo. 293;
Tawney v. United Rys., 262 Mo. 602; Barrett v. Delano,
187 Mo. App. 501; Evers v. Ferry Co., 127 Mo. App. 236;
Batten v. Modern Woodmen, 111 S. W. 513.   (7)   It
was plaintiff's duty to look and listen, and it was for
the jury to determine the question of fact.   Products
Co. v. United Rys., 185 Mo. App. 310; Burnham v. Rail-
road, 175 Mo. App. 286; Cole v. Met. St. Ry. Co., 121 Mo.
App. 605; Owens v. Railway, 188 Mo. App. 450; Huggart
v. Mo. Pac., 134 Mo. 673; Kelsay v. Mo. Pac., 129 Mo.
362; Sanguinette v. Railroad, 196 Mo. 466; Hayden v.
Railroad, 124 Mo. 566.   (8) Instruction 8 states the acts
of the appellant, which, if the jury believe to be true,
would amount to such negligence upon his part as to
prevent a recovery.   If any error was committed in this
case by the trial court, it was in overruling respondents'
demurrer to all the evidence, because appellant's own
testimony showed himself guilty of such negligence as
to prevent a recovery in the case.   Schmelzer v. Metro-
politan, 166 Mo. App. 204; Guffey v. Harvey, 179 S. W.
729; Byerley v. Metropolitan, 172 Mo. App. 470; Prod-
ucts Co. v. United Rys., 185 Mo. App. 310; Burnham v.
Railway, 175 Mo. App. 286; Cole v. Met. St. Ry. Co., 121
Mo. App. 605; Owens v. Railway, 188 Mo. App. 450;
Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Rail-
road, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673;
Kelsay v. Railroad, 129 Mo. 362.

WHITE, C.—The plaintiff sued for injuries received
by collision with a street car operated by defendants.
There was a verdict for the defendants and the plain-
tiff appealed.

The place where the collision occurred was at the intersection of Blue Avenue and the defendant's street railway tracks at a point between Kansas City and Independence. At that point Blue Avenue runs practically east and west, and two parallel street-car tracks cross it running north and south. Blue Avenue was a hundred feet wide, with a macadamed track down the centre twenty-six feet wide. Along the east side of the street-car tracks, and on the south side of Blue Avenue, was situated the power-house of the street-car company, sixty-six feet in length north and south, and thirty-three feet wide east and west.

The west side of the power-house was about six feet east of the east rail of the east track, and the north front of the power-house, being fifty feet from the centre of the avenue, was about flush with its south line. About half way between the northwest corner of the power-house and the centre of the street was a pole, on which was posted in large letters, "STOP." This was called a safety stop, and indicated that cars going north were required to stop at that point before crossing the street. The collision occurred where the east track crosses the macadam portion of the avenue, after the colliding car had passed this safety stop.

The evidence shows that the plaintiff was driving a heavily-loaded moving van westward along the centre of the avenue upon the macadam portion of it. He sat upon a seat in the front part of the van, so that his view was unobstructed by his load. He testified that before he got to where the power-house shut off his view he looked south to see if a car was approaching from that direction, and saw none. He then drove on until the power-house obstructed his view to the south, so that he could not see an approaching car until he had cleared the power-house. He then looked south and saw a car coming from that direction, a little beyond the south end of the power-house. There was nothing in the appearance of the car, he said, to indicate it would not stop at the safety stop according to custom. He was well on the track before he discovered that the car was

not going to stop, and then he endeavored to get out of the way, but the car struck his wagon and caused serious injuries, for which he brought the suit.

Several witnesses testified that it was the custom of the north-bound cars to stop before crossing the street at that point, in obedience to the sign indicated by the safety stop. Defendants offered no evidence to controvert them, though they did contend that the place was a regular stopping place to receive and discharge passengers. Plaintiff's evidence tended to show the stops were regularly made there when no passengers got on or off. It further shows, and it is conceded by defendants, that in approaching the street-car tracks from the east, at a certain distance from the tracks the power-house shut off the view of the tracks to the south and a person could not see them again until quite close to the track. The distance from the track where the view is first shut off in that way was stated by the defendants' engineer to be fifty-five feet. Then from the time the view of the plaintiff approaching from the east would be cut off by the power-house until he got past it, so that he could look up the track, was such that a car would have time to come a considerable distance.

Some witnesses swore that there were two men in the motorman's box at the time, and one seemed to be teaching the other how to run the car. The motorman swore, and the defendants produced some corroborating evidence to show, that he attempted to stop the car according to custom when "the overhead blew out," so that he could not control his car. There was considerable evidence contradicting his statement—evidence which tended to show that he made no attempt to stop until the wagon was upon the track. His evidence indicates that he didn't take the proper precaution to make the regular stop, and could not have made it in any event after he began the attempt, and only used his emergency expedient of reversing the power after he saw that he was likely to strike the plaintiff at a point in the street fifty feet north of where he should have made the safety stop. Respondents do not seriously

question that there was sufficient evidence for the jury tending to show the custom to stop in obedience to the safety stop sign, and whether or not defendants were negligent in that regard was submitted to the jury by appropriate instruction.

I. Since appellant claims that erroneous instructions were given relating to contributory negligence it will be necessary to consider more closely the facts upon which those instructions bear.

*Contributory Negligence.*

Plaintiff testified that as he approached from the east, before he got near the power-house and when he was at a point where he could see the tracks southward beyond it, he looked in that direction and saw no car. He drove on and the power-house shut off his view of the track until he was so close to it that his horses already were stepping upon it; then he looked southward and saw the car approaching a little beyond the south end of the power-house. The measurement of distances by witnesses for both the plaintiff and the defendant corroborated that statement, and they show that his horses would have to be about on the track before the driver sitting on the wagon could see past the power-house to the distance where the car was coming. The plaintiff then says he went ahead, supposing the car would make the usual stop; and when he found out, by the time the car had reached the stopping place, that it wasn't going to stop, he "whipped up," did the best he could to get off the track, and threw up his hand for the motorman to stop. The testimony varied as to where the wagon was struck; some witnesses testified that it was struck about the front wheels and plaintiff testified it was struck about the centre of the back wheels. The wagon and team were carried to the north side of the avenue, a distance of from thirty to forty-five feet, and thrown off to the west side of the track.

Plaintiff's testimony indicates that he saw nothing in the attitude of the motorman, nor in the way the car was coming, to indicate that it would not stop at the usual place, until it was too late to escape the collision.

Having knowledge of the custom, he had a right to presume the usual stop would be made, and if, acting upon that presumption, he used ordinary care for his own safety, he could not be nonsuited on account of his own negligence. After giving him the benefit of the presumption mentioned, whether, under the circumstances indicated, he was guilty of contributory negligence was a question for the jury, under numerous authorities in this State, if that issue was raised by the pleading.

The rule is that any person approaching a street car track has a right to presume that those operating cars on the track will exercise ordinary care to avoid injuring anyone who may be about to cross, and has a right to act upon that presumption. The case of Moon v. St. Louis Transit Co., 237 Mo. 425, is where the plaintiff was struck by a car and injured while crossing the street-car track in a carriage. In describing the driver's approach to the track the opinion says (p. 430):

"When his horses got about eight feet from the track, he being about twenty feet therefrom, he saw a car coming from the south, he thought, about 150 or 160 feet away. He judged he could cross safely, but when his horses were about three feet from the track he saw that the car was coming much faster than he at first thought and he then whipped up. The carriage was struck on the rear hub. The driver testified that the car was going about three times as fast as the carriage at the time he was struck, and that he could have stopped the carriage in a distance of from eight to ten feet."

The court then, in commenting upon this evidence, said (pp. 433-4):

"But that is not all, the evidence for appellant further tended to show that the driver did not realize or discover that the car was running in excess of the ordinance speed, until the team was within three feet of the track, which fact made it impossible for him to have stopped in time to have avoided the collision if he could not have stopped the team under eight or ten feet, as the evidence tended to show; *and until he discovered the speed of the car, the driver had the right to presume*

*and to rely upon the presumption that the car was not running in excess of the speed prescribed by the ordinance.* If the speed of the car had not exceeded that fixed by ordinance, then clearly under the evidence in this case the collision would not have occurred.''

It is impossible to see the difference in principle between that case and this. There the plaintiff had a right to presume that the street car employees would keep within the speed limit; he couldn't tell that they were exceeding the speed limit, and counting upon the presumption he drove upon the track and would have got across safely except for the excessive speed of the car, and it was held that he was not guilty of contributory negligence as a matter of law.

In the case of Eckhard v. St. Louis Transit Co., 190 Mo. 593, a man was killed while crossing the street car track, and the question of whether he was guilty of contributory negligence in going upon the track was an issue; the defendant's alleged negligence was running beyond the speed limited by ordinance. The court says on page 617:

"The deceased had the right, as said in the Riska case, *to presume that the car was not moving at a greater rate of speed than that prescribed by ordinance,* and acting upon this presumption, had the car been running at the speed he had the right to presume it was, there was reasonably sufficient time for him to cross the track in safety, it was not contributory negligence for him to attempt to do so.''

The Riska case referred to there is Riska v. Union Depot Railroad Co., 180 Mo. 168. This court, in that case, says at page 191:

"But, where the law, as in the case at bar, regulates the speed of cars, every pedestrian *has the right to presume,* in the absence of evidence to the contrary, that they will not be run in violation of it *and to gauge his movements accordingly.''*

The Kansas City Court of Appeals has decided a case in which the facts are almost exactly the same as the facts here. [Percell v. Railroad, 126 Mo. App. 43.]

That is where the plaintiff was driving towards the street car track with the intention of crossing it when he saw a car approaching on the track, but he knew there was a custom to stop the car before crossing the street on which he was driving. The car, however, did not stop, collided with him and injured him. The question of whether he was guilty of contributory negligence in driving upon the track was before the court and the court said (page 51):

"But a traveler has the right to presume that the operator of approaching trains or cars are exercising and will continue to exercise reasonable care in approaching a crossing. And, while this presumption does not absolve him from the duty of using his senses for his own protection, still, where the appearances disclosed to reasonable observation do not indicate the presence of negligence, he has the right to continue to indulge in the presumption stated and to act thereon."

And further the court said (page 52):

"With nothing in the appearance of the train to disclose that it was beyond control, and with every reason to think it would stop at the accustomed place, it was not negligence *per se* for plaintiff, *who, under the conditions presumed*, had abundant time to clear the crossing, momentarily to withdraw his eyes from the train."

Italics in all above quotations are the writer's.

Under these authorities, if they are to be followed in this case, the plaintiff had a right to presume that the defendant's motorman would perform his duty, would stop where he was ordered to stop and where it was customary to have cars stop. He had a right to act upon that presumption and, if there was nothing in the appearance of the car to indicate that it would not stop there and he got upon the track before he discovered that it would not stop, he was not guilty of contributory negligence as a matter of law.

The circuit court, on the issue of contributory negligence, gave instructions on behalf of the defendants as follows:

"5. The court instructs the jury that it was the duty of the plaintiff before he drove upon or so close to the track in question as to be in danger of being struck by a passing car, *to look and listen for cars running thereon, and that this duty was a continuous one from the time he got upon said track or so near thereto as to be in danger of being struck by a passing car until after he got off of the same, and if he saw or knew the car was approaching it was his duty to get off the track and let the car pass,* and if you believe from the evidence that the plaintiff did not look or listen for approaching cars before he went upon said track, or that he did not continue to so look and listen, and by so doing he could have seen or heard the approaching car and been apprised that it would not stop before crossing said highway in time to have avoided said collision, then you are instructed that his injuries, if any, were caused from his own fault or negligence, and your verdict must be for the defendants.

"8. The court instructs the jury that if you find and believe from the evidence that plaintiff as he approached the track, if he had looked he could have seen the car approaching, or if he had listened could have heard the car approaching, and that he drove upon the track without looking, or if he did look, without heeding what he saw, and without listening, or without heeding what he heard, then plaintiff is not entitled to recover and your verdict must be for the defendants."

These instructions are in effect directions to find for the defendants at all events. If the issue of plaintiff's negligence could be submitted to the jury at all these instructions should not have been given. This laying down of his duty in Instruction Number 5 was entirely superfluous, because the evidence is undisputed that he did look and that he saw the car coming; that he presumed it would stop at the usual place and he drove on acting upon that presumption. That being the case there was no issue of fact as to whether he looked. The instruction required him to "get off the

track and let the car pass," whether it was possible to get off or not. It was his duty to use ordinary care to avoid injury and to discover whether the car would or would not stop at the usual place.

After thus defining plaintiff's duty the court presents Instruction Number 8 which tells the jury if they found "that he drove upon the track without looking, or if he did look without heeding what he saw" . . . then he was not entitled to recover. That is to say, if he drove upon the track without stopping—if he saw the car coming and still drove upon the track, he could not recover. This, in the face of the rule, that he would not necessarily be negligent in driving upon the track under the circumstances as shown here.

Instruction Number 8 also authorizes the jury to render a verdict for defendants if plaintiff was negligent, although his negligence did not in any manner contribute to his injury. That is, it directs the jury to find for the defendants if the plaintiff failed to look or failed to heed what he saw, although they are not required to find that he could have avoided the injury by looking, or by attempting to stop or clear the track after he saw the car. The evidence indicates that after he became aware of danger he was unable to escape it by getting off the track in time.

These instructions are erroneous for another reason, and that is the answer does not plead the acts of negligence hypothesized in them. The contributory negligence pleaded in the answer is as follows:

"If the plaintiff received any injuries at the time mentioned in said petition the same were caused by the plaintiff's own fault and negligence."

This is no sufficient allegation to authorize a submission of the issue to the jury, as will be seen as we consider the next instruction in order, given for defendants, which is as follows:

"6. The court instructs the jury that before plaintiff can recover in this case, it devolves upon him to prove, by a preponderance of the evidence, that defendants were negligent, yet before you can find for the

plaintiff, you must also further find and believe from the evidence that *plaintiff himself was not negligent in any manner that contributed to the collision* between the street car and plaintiff's wagon, and unless you so find and believe, plaintiff cannot recover and your verdict must be for the defendants.''

That form of instruction has been condemned by this court in a case similar to this, in Benjamin v. Railroad, 245 Mo. 598. The instruction happened to be Number 6, and is found on page 612.

The pleading as set out above in the answer is word for word the plea of contributory negligence in the Benjamin case (page 614), and the court there held an instruction was erroneous which authorized a verdict for the defendant, ''if plaintiff was guilty of negligence *of any character* which directly contributed to his injury.'' It was held that the issue of contributory negligence was an affirmative defense, that the statement of the answer did not allege any specific act which constituted such negligence, and that the allegation of contributory negligence should be as specific and direct as allegations of negligence in the petition, and therefore, it was not pleaded at all. The instruction authorized a verdict for the defendant if plaintiff was guilty of any negligence of any kind or character, whether pleaded or not, and was, therefore, erroneous. If that case is to be followed, the giving of instruction number 6 here was error.

The St. Louis Court of Appeals has followed the Benjamin case in the case of Williams v. Lamp Co., 173 Mo. App. 87, l. c. 97, where it was held that the acts constituting contributory negligence must be pleaded, and an instruction like the one under consideration was disapproved. The Kansas City Court of Appeals likewise has reached the same conclusion in the case of Miller v. Engle, 185 Mo. App. 588, l. c. 580, where the court denounced a similar instruction calling it ''merely an abstract instruction on contributory negligence'' and held it was erroneous because it did not ''point out in anyway what acts would constitute con-

tributory negligence.'' The answer here, under those authorities, fails to plead contributory negligence, and therefore, there was no question for the jury on that issue. [Taylor v. Met. Street Railway Co., 256 Mo. l. c. 216; White v. Railroad, 250 Mo. l. c. 482; Collett v. Kuhlman, 243 Mo. l. c. 591.]

II.   The court also gave for defendants instruction numbered 2, as follows:

"2.   The court instructs the jury that there is no evidence in this case that defendants were running the car in question at a negligent, careless or high rate of speed, *and upon that issue your* verdict will be for the defendants.''

Misleading Instruction.

This instruction is ambiguous. It is an attempt to remove from the jury the issue of excessive speed. It might be interpreted to mean that there was no issue before them as to whether the car was run at a careless rate of speed; or, it might be interpreted to mean that upon that issue the verdict must be for the defendants in all events. That is, it might mean that in any event the verdict must be for the defendant on account of that issue being in the case. Juries cannot be presumed to weigh nicely the significance of obscure language and a jury very easily could be misled by this instruction in the way indicated.

Furthermore, the instruction is erroneous because it has a positive misdirection. The jury are told to render a verdict for defendant on that issue, whatever they might do on other issues; they could give two verdicts, one verdict for the defendant on that issue and possibly a verdict for the plaintiff on other issues. The best that can be said of the instruction is that it is hopelessly confusing.

Furthermore, it was improper for the court to tell the jury that there was no negligent rate of speed and remove that issue entirely from their consideration. The evidence shows the car was running at the rate of ten or twelve miles an hour. Whether or not that was a careless rate of speed depended upon the circumstances. If the speed was that rate after the

defendant's car was so close to the safety stop that it could not be stopped at that point, then it was a negligent rate of speed. The evidence of the motorman himself shows that he could not stop at that point because he did not have the car sufficiently under his control; it shows that he was going at a rate of speed which necessarily carried him beyond it, and caused him to use his emergency reverse in his attempt to avoid hitting. the plaintiff's wagon at a point fifty feet beyond where the car should have stopped. It was a careless rate of speed for the motorman to approach the safety stop so fast that he could not stop there and to run so that necessarily he must collide there with anybody who might happen to be upon the track in the street, unless such collision was caused by the blowout of the overhead, which was a question of fact for the jury. There was considerable evidence tending to show that the motorman was teaching a new man to run the car and was not paying attention so as to keep within proper speed at that point.

This court has said in the case of Beier v. St. Louis Transit Co., 197 Mo. 215, that the rate of speed at which a car may be going may be negligent or not, according to the circumstances, and in that case the direct evidence indicated that the car which caused the injury was running at no greater rate of speed than the evidence shows the car was running here. It did not matter whether it was within the speed limit or not. In that case the court says (page 230) : "In other words, unlawful speed may be one thing and negligent speed may be another." The positive speed of the car does not necessarily determine whether it is negligent or not, as indicated by the St. Louis Court of Appeals in case of Brandt v. United Rys. Co., 153 Mo. App. 16. In that case the court said (pages 22-3) : "In the present case, though the evidence conclusively shows the car was not operated to exceed twelve miles an hour, an element of liability may appear against defendant notwithstanding the ordinance [which permitted that

rate], if other facts and circumstances in proof suggest such a rate of speed to have been careless."

III. Plaintiff objected and excepted to the giving of the following instruction:

Stopping Car.

"AA. The court instructs the jury that issues of the alleged lack of giving signals, and the alleged failure, in the exercise of ordinary care, to stop the car after defendant's motorman saw plaintiff in a position of peril, are withdrawn from your consideration, and no finding can be made for the plaintiff upon either ground."

This instruction was given on the court's own motion. By this instruction the motorman is relieved from exercising ordinary care after he saw plaintiff's peril, although the plaintiff was not guilty of any negligence whatever. There was evidence tending to show he did not attempt to stop after he saw the peril, and other testimony to show he pursued an improper method in his attempt if he did attempt to stop.

It is evident the motorman in approaching the crossing could have seem the heads of plaintiff's horses before plaintiff could see the car past the corner of the power-house. The plaintiff probably sat twelve or fourteen feet back of his horses' heads. The motorman was not more than six or seven feet from the western edge of his car. After the heads of the horses appeared to the motorman's view, plaintiff would travel six or eight feet before he could see the car. The car probably was running about four times as fast as the wagon, so that the car must have run twenty-five or thirty feet after the motorman could see the peril of the plaintiff before plaintiff could see the car. The motorman testified: "When I got right at the south end of the power-house I see the horses stick their heads past the end of the building."

At that moment he must have known that plaintiff could not see his car and was likely to drive upon the track. This instruction tells the jury that the motorman after that was under no obligation whatever to try

to stop his car and avoid the collision. It was, there-fore, erroneous.

These instructions as a whole present a wrong theory to the jury and do violence to any rational view of the case. And none of them was cured by the single instruction given for plaintiff which was solely on the issue of whether the defendant was negligent in failing to observe the custom and stop at the safety stop.

The judgment is reversed and the cause remanded.
*Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.